## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COUNTY OF MONMOUTH and DIANE
SCAVELLO, individually and on behalf of all
others similarly situated,

                  Plaintiffs,

        v.

RITE AID CORPORATION and RITE AID
HDQTRS. CORP.,

                  Defendants.

Case No. 2:20-cv-02024-KSM

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     PARTIES ..............................................................................................................5

        A.      Plaintiffs ....................................................................................................5

        B.      Defendants .................................................................................................8

III.    JURISDICTION AND VENUE ...........................................................................9

IV.     FACTUAL BACKGROUND ..............................................................................10

        A.      Health Insurance and Prescription Drug Benefits in the United States .................10

        B.      Standardized Prescription Claims Adjudication Process ......................................11

        C.      Pharmacies Are Required to Report the Cash Price for the Drug Being
                Dispensed as Their U&C Price ..........................................................................13

        D.      Other Pharmacies Report Their Prescription Drug Discount Program
                Prices as Their U&C Prices ...............................................................................15

        E.      Rite Aid's RSP Prices Are Its True U&C Prices for RSP Drugs ...........................16

        F.      Rite Aid Improperly Overcharges Plaintiffs and the Class for RSP Drugs ...........18

V.      CLASS ACTION ALLEGATIONS ....................................................................24

VI.     TOLLING OF THE STATUTE OF LIMITATIONS...........................................28

VII.    CLAIMS FOR RELIEF ......................................................................................31

FIRST CLAIM FOR RELIEF ......................................................................................31

SECOND CLAIM FOR RELIEF .................................................................................34

THIRD CLAIM FOR RELIEF .....................................................................................35

FOURTH CLAIM FOR RELIEF .................................................................................37

FIFTH CLAIM FOR RELIEF ......................................................................................40

SIXTH CLAIM FOR RELIEF......................................................................................42

SEVENTH CLAIM FOR RELIEF ...............................................................................47

EIGHTH CLAIM FOR RELIEF ..................................................................................50

i

NINTH CLAIM FOR RELIEF ..................................................................................................55

TENTH CLAIM FOR RELIEF .................................................................................................58

ELEVENTH CLAIM FOR RELIEF .........................................................................................61

TWELFTH CLAIM FOR RELIEF ...........................................................................................65

THIRTEENTH CLAIM FOR RELIEF .....................................................................................70

FOURTEENTH CLAIM FOR RELIEF ....................................................................................73

FIFTEENTH CLAIM FOR RELIEF ........................................................................................77

SIXTEENTH CLAIM FOR RELIEF ........................................................................................80

SEVENTEENTH CLAIM FOR RELIEF ..................................................................................84

VIII.    PRAYER FOR RELIEF .................................................................................................85

IX.    JURY DEMAND .............................................................................................................86

## I.     INTRODUCTION

1.     Plaintiff County of Monmouth, a third-party payor,[1] and Plaintiff Diane Scavello, an individual consumer, (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated (the "Class"[2]) against Defendants Rite Aid Corporation ("Rite Aid Corp.") and Rite Aid Hdqtrs. Corp. ("Rite Aid HQ") (collectively, "Defendants" or "Rite Aid") to recover for the harm caused by Rite Aid's unfair and deceptive price scheme to artificially inflate the "usual and customary" prices reported and used to charge Plaintiffs and members of the Class for purchases of prescription drugs at Rite Aid pharmacies.

2.     About 90% of all United States citizens are now enrolled in private or public health insurance plans that cover at least a portion of the costs of medical and prescription drug benefits.[3] A feature of most of these health insurance plans is the shared cost of prescription drugs. Typically, when a consumer fills a prescription for a medically necessary prescription drug under his or her health insurance plan, the third-party payor pays a portion of the cost and the consumer pays the remaining portion of the cost directly to the pharmacy in the form of a copayment, coinsurance, or deductible payment. Given the premiums paid in exchange for health insurance benefits (including prescription drug benefits), consumers and third-party payors reasonably

---

[1]     The term "third-party payor" or "TPP" refers to: (i) any private health insurance companies, third-party administrators, health maintenance organizations, health and welfare plans that make payments from their own funds; and (ii) other health benefit providers and entities with self-funded plans that contract with a health insurer or administrator to administer their prescription drug benefits.

[2]     Unless otherwise stated, references to the Class herein include and apply to the Class, as defined below.

[3]     Stephanie Marken, *U.S. Uninsured Rate at 11%, Lowest in Eight-Year Trend*, http://www.gallup.com/poll/190484/uninsured-rate-lowest-eight-year-trend.aspx (last visited Apr. 8, 2020).

expect to pay the same price or less than the price paid by uninsured or cash-paying individuals for the same prescription.

3.    Instead of receiving the benefits of insurance, however, Plaintiffs and members of the Class are actually paying much more for certain prescription drugs than Rite Aid's cash-paying customers[4] who fill their prescriptions through Rite Aid's discount prescription drug program, called the "Rx Savings Program" ("RSP"), without using health insurance.

4.    A pharmacy cannot charge a consumer, or report to a third-party payor, a higher price for prescription drugs than the pharmacy's "usual and customary" ("U&C") price.  The U&C price is referred to by Rite Aid and known throughout the pharmacy industry as the price that the pharmacy charges the cash-paying public.  Indeed, the Medicare Prescription Drug Benefit Manual, codified in the Code of Federal Regulations, defines the "usual and customary price" as "the price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug."  42 C.F.R. §423.100. Rite Aid's practices violate this federal law, as well as similar state regulations.

5.    As alleged below, Rite Aid, instead of complying with this requirement, maintains an undisclosed, dual pricing scheme for the prescription drugs available through the RSP.  Rite Aid has used its RSP as a mechanism to knowingly and intentionally overcharge consumers and third-party payors, like Plaintiffs and the Class, in excess of Rite Aid's actual U&C prices for these prescription drugs.

6.    Rite Aid is the third largest retail pharmacy in the United States.  In fiscal year 2017, Rite Aid operated with over 4,500 retail pharmacies in 31 states and the District of Columbia

---

[4]    "Cash-paying customers," also known as "self-paying customers," refers to customers who pay for the drugs themselves – whether by cash, credit card, or check – without using insurance.

and earned approximately $18.2 billion in pharmacy sales in the United States.[5]  In fiscal year 2019, Rite Aid operated 2,400 stores in 18 states and earned approximately $10.4 billion in pharmacy sales in the United States.[6]

7.    Rite Aid, through its RSP, allows cash-paying customers to purchase thousands of brand name and generic prescription drugs at a discount to the cash price (the "RSP Prices").[7]  The prices of such drugs, depend on, among other things, the drug and days' supply.

8.    The RSP formulary includes thousands of brand name and generic medications (the "RSP Drugs").  The term RSP Drug includes any brand name or generic prescription drug that was part of the RSP.  A subset of RSP Drugs is described in the "Directory of Generic Medications" (attached as Exhibit A).

9.    Rite Aid's RSP is not a special, limited, or a one-time offer.  Any member of the general public is eligible to participate in the program and is not required to pay any fee to join. Rite Aid does not limit the eligibility for, or duration of the availability of, RSP Prices other than to require cash payment.

10.    Although any member of the general public is eligible to participate in the RSP, Rite Aid does not advertise the RSP in its pharmacies, including at the point of purchase. Furthermore, while Rite Aid pharmacists often advise customers who ***do not*** have insurance of the availability of the RSP, they do not advise customers ***using insurance*** that the drug being

---

[5]    Rite   Aid   Corporation,   Annual   Report   (Form   10-K)   (May   3,   2017), (https://www.sec.gov/Archives/edgar/data/84129/000104746917003159/a2231929z10-k.htm).

[6]    Rite Aid Corporation, Annual Report (Form 10-K) (Apr. 25, 2019) (https://secureir.edgar-online.com/riteaid/fetchFilingFrameset.aspx?FilingID=13376367&Type =HTML&filename=RITE_AID_CORP_10K_20190425).

[7]    https://www.riteaid.com/pharmacy/prescription-savings#rx-savings-program.  (last accessed Apr. 8, 2020).

purchased may be cheaper if they paid with cash through the RSP, a program that Rite Aid touts as being helpful for people who do not have insurance or who are underinsured.

11.     Even with knowledge of the RSP and its prices, customers using insurance still may not be able to ascertain that they are being charged inflated copayments.  For example, while the "usual and customary" price Rite Aid reports to a third-party payor exceeds the RSP Price for the same drug, the copayment paid by the customer may be lower than the RSP Price.  However, because copayments are usually calculated based on the "usual and customary" price Rite Aid reports to third-party payors, the customer would have paid a lower copayment but for Rite Aid's practice of reporting inflated "usual and customary" prices to third-party payors.  The complex and involved analysis needed to ascertain Rite Aid's illegal scheme requires both access to information that customers lack and reasoning beyond that expected of a lay customer.

12.     Rite Aid does not provide Plaintiffs with records of transactions involving Rite Aid's cash customers, which includes cash customers paying RSP prices.  As a result, Plaintiffs had no information regarding how many of Rite Aid's customers were in the RSP. Plaintiffs further had no information regarding the actual cash prices charged to customers enrolled in the RSP.

13.     Upon information and belief, Rite Aid's cash-paying customers pay no more than the RSP Prices when they purchase prescription drugs that are on the RSP formulary.

14.     Unbeknownst to Plaintiffs and the Class, Rite Aid's RSP Prices represent Rite Aid's actual U&C prices for the RSP Drugs.  For the RSP Drugs, Rite Aid should have reported and charged to Plaintiffs and the Class the RSP Prices at Rite Aid's U&C price because the RSP Price was, and still is, the price Rite Aid charges uninsured customers paying cash.

15.     However, for years, Rite Aid has knowingly and intentionally reported artificially inflated U&C prices for RSP Drugs on claims for reimbursement submitted to third-party payors.

4

Because the reported U&C price is used to calculate the amount a consumer must pay, Rite Aid also overcharged consumers and beneficiaries of third-party payors for RSP Drugs by improperly collecting inflated copayments, coinsurance, or deductible amounts.

16.     Rite Aid's misconduct has caused Plaintiffs and the other members of the Class to suffer significant injury.  This action is brought as a class action on behalf of all consumers and TPPs nationwide, or in the alternative, in the states of California, Connecticut, Delaware, Georgia, Indiana, Kentucky, Louisiana, Maine, Maryland, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Vermont, and Virginia, who purchased or paid for RSP Drugs, other than for resale (*see* Class definitions below).  Accordingly, Plaintiffs seek to recover restitution, monetary damages, injunctive and equitable relief or other remedies for negligent misrepresentation, unjust enrichment, and violations of state consumer protection statutes enumerated below, and for declaratory and injunctive relief under the Declaratory Judgment Act.

## II.    PARTIES

### A.    Plaintiffs

17.     Plaintiff County of Monmouth ("Plaintiff Monmouth") is located in Freehold, New Jersey.  Plaintiff Monmouth is a county and public entity organized and existing pursuant to Title 40 of the Laws of the State of New Jersey and is a citizen of the State of New Jersey.  Plaintiff Monmouth, by and through its appointed administrator, manages operations of sixty county departments comprised of more than 2,700 employees to deliver services to residents.  Plaintiff Monmouth also operates a self-funded health insurance plan and workers' compensation plan for its employees and retirees and directly pays for all or a portion of its insureds' (including employees and dependents) healthcare costs, including but not limited to prescription costs.

18.    Plaintiff Monmouth's Human Resources Benefits Division administers the County's self-funded employee benefit programs and employee enrollments. The programs include medical and prescription drug benefits to participants along with their dependents and retirees (collectively, "beneficiaries"). Plaintiff Monmouth administers its health and welfare fund in New Jersey and its beneficiaries purchased RSP Drugs in, *inter alia*, California, Connecticut, Delaware, Georgia, Indiana, Kentucky, Louisiana, Maine, Maryland, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Vermont, and Virginia. Beneficiaries of Plaintiff Monmouth purchased tens of thousands of medically-necessary RSP Drugs during the Class Period for personal use. Plaintiff Monmouth is ultimately at risk and responsible for reimbursing or paying for beneficiaries' purchases of prescription drugs. Plaintiff Monmouth paid more for RSP Drugs than it would have absent Rite Aid's misconduct.

19.    Plaintiff Monmouth and other third-party payors will continue to pay for beneficiaries' purchases of RSP Drugs because those drugs are medically necessary, and thus, are non-discretionary purchases. As such, beneficiaries cannot, and are not required to, avoid future purchases of medically-necessary RSP Drugs from Rite Aid. Ride Aid is also for many of these beneficiaries their established pharmacy with which they have a standing relationship and prescription history.

20.    Plaintiff Diane Scavello ("Plaintiff Scavello") is, and at all times relevant was, domiciled in, and is a citizen of, the State of Pennsylvania. Plaintiff Scavello has purchased prescription drugs for personal use from Rite Aid in Pennsylvania between 2016 and the present. Plaintiff Scavello carries federal health insurance through Medicare and carried Medicare Advantage coverage through Independence Blue Cross Medicare during the time she purchased prescription generic drugs from Rite Aid. Medications prescribed to Plaintiff Scavello appear on

the list of RSP Drugs attached as Exhibit A. Although the prescription drugs that Plaintiff Scavello purchased were contained on the RSP formulary, Plaintiff Scavello was unaware of the RSP, that the drugs she purchased were on the RSP formulary, or that the prices of the drugs under the RSP were cheaper than what she paid, or otherwise less than the amount Rite Aid submitted to her insurance.  Moreover, because Plaintiff Scavello's insurance covered the drugs she purchased, she had no reason to conduct an investigation to determine whether she could purchase the drugs at a lower price through an alternative means.  Rite Aid overcharged Plaintiff Scavello on her purchases of RSP Drugs.  Rite Aid is required to charge Plaintiff Scavello an amount that does not exceed the U&C price Rite Aid charges its cash-paying customers for these prescription drugs. For these sales, Rite Aid knowingly based Plaintiff Scavello's payment on a purported U&C price that was fraudulently inflated above Rite Aid's true U&C price – that is, the price Rite Aid offers under its RSP program.

21.    Plaintiff Scavello reasonably believed that because she pays premiums for health insurance with prescription benefits coverage and because she is enrolled in Medicare, she would pay at least the same as, and not more than, a cash-paying customer for her prescriptions filled at Rite Aid.  Accordingly, Plaintiff Scavello would not have paid the inflated prices absent Rite Aid's deception.

22.    Plaintiff Scavello's and other consumers' purchases of RSP Drugs are medically necessary, and thus, are non-discretionary purchases.  As such, Plaintiff Scavello cannot, and is not required to, avoid future purchases of medically-necessary RSP Drugs from Rite Aid. Rite Aid is also Plaintiff Scavello's established pharmacy with which she has a standing relationship and prescription history.

23.     Plaintiffs and members of the Class have been injured in their business or property by having paid or been reimbursed more for RSP Drugs than they would have absent Rite Aid's misconduct alleged herein.  Plaintiffs were injured by the illegal, unjust, fraudulent, unfair, and deceptive conduct described herein, both individually and in a manner that was common and typical of Class members.  Each time Rite Aid charged Plaintiffs and the Class a price for a drug that was higher than the RSP Price for that same drug, Plaintiffs and the Class suffered a separate and independent injury.

**B.    Defendants**

24.     Defendant Rite Aid Corp. is a Delaware corporation with its headquarters at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.  At all relevant times, Rite Aid Corp., through its subsidiaries, including Rite Aid HQ, operated and continues to operate the RSP, including essential operations, and the execution of contracts and other business activities in furtherance of the scheme alleged herein.

25.     Defendant Rite Aid Hdqtrs. Corp. is a Delaware corporation with its headquarters at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.  Defendant Rite Aid HQ is a wholly-owned subsidiary of Defendant Rite Aid Corp. and does business as Rite Aid Corporation.  Rite Aid HQ and Rite Aid Corp. operate the scheme alleged herein in concert.  So much so, that upon information and belief, employees of Rite Aid HQ hold themselves out to be, and often identify themselves as, employees of Rite Aid Corp. when transacting business with third parties.

26.     Rite Aid is the third largest retail pharmacy in the United States.  In fiscal year 2017, Rite Aid operated over 4,500 retail pharmacies in 31 states and the District of Columbia and earned approximately $18.2 billion in pharmacy sales in the United States.[8]  In fiscal year 2019,

---

[8]     *Supra* note 5.

8

Rite Aid operated 2,400 stores in 18 states and earned approximately 10.4 billion in pharmacy sales in the United States. [9]

27.    Rite Aid relies heavily on its pharmacy sales.  In Rite Aid's 2019 fiscal year, prescription drug sales made up 66.6% of Rite Aid's total drugstore sales.  Rite Aid filled 171.1 million prescriptions in fiscal year 2019.  Rite Aid's latest annual report filed with the Securities Exchange Commission on April 25, 2019 lists Rite Aid's total prescription drug sales for each of the three most recent fiscal years at over $10 billion.[10]

## III.    JURISDICTION AND VENUE

28.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), because this is a class action, including claims asserted on behalf of a nationwide class, filed under Federal Rule of Civil Procedure 23; there are hundreds of thousands, and likely millions, of proposed Class members; the aggregate amount in controversy exceeds the jurisdictional amount or $5,000,000; and Rite Aid is a citizen of a state different from that of Plaintiff Monmouth and members of the Class.  Moreover, Rite Aid's wrongful conduct, as described herein, foreseeably affects consumers in Pennsylvania and nationwide.

29.    Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§1391(b)-(d), because, *inter alia*, Rite Aid is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Rite Aid operates pharmacies in this District and maintains contacts within this District that are significant and sufficient to subject it to personal jurisdiction.

---

[9]    *Supra* note 6.

[10]    *Supra* note 6.

## IV.    FACTUAL BACKGROUND

### A.    Health Insurance and Prescription Drug Benefits in the United States

30.    The vast majority of Americans have a health insurance plan (either private or public) that covers at least a portion of their medical and prescription drug expenses.

31.    Health insurance is paid for by a premium that covers medical and prescription drug benefits for a defined period.  Health insurance can be purchased directly by an individual or obtained through employer plans that either provide benefits by purchasing group insurance policies or are self-funded but administered by health insurance companies and their affiliates. Consumers pay premiums to receive their health insurance benefits.

32.    If a health insurance plan covers outpatient prescription drugs, the cost for prescription drugs is often shared between the consumer and the third-party payor.  Such cost sharing can take the form of deductible payments, coinsurance payments, or copayments.  In general, deductibles are the dollar amount the consumer pays during the benefit period (usually a year) before the health insurance plan starts to make payments for drug costs.  Coinsurance generally requires a consumer to pay a stated percentage of drug costs.  Copayments are generally fixed dollar payments made by a consumer toward drug costs.

33.    Consumers purchase health insurance and enroll in employer-sponsored health insurance plans to protect themselves from unexpected high medical costs, including prescription drug costs.  Given the premiums paid in exchange for health insurance benefits (including prescription drug benefits), consumers and third-party payors expect to pay the same price or less than the price paid by uninsured or cash-paying individuals for a prescription.  Otherwise, consumers not only would receive no benefit from their prescription drug benefits, but, in fact, would be punished for having health insurance.  Therefore, Plaintiffs and members of the Class

10

reasonably expect to pay the same or less for RSP Drugs than cash-paying Rite Aid customers enrolled in the RSP program.

B.    **Standardized Prescription Claims Adjudication Process**

34.    The prescription claims adjudication process, which is the process of accepting or denying prescription claims submitted to a third-party payor, is a systematic, standardized electronic process used throughout the pharmaceutical industry.

35.    This uniform process is derived from National Council for Prescription Drug Programs ("NCPDP") industry standards for the electronic transmission and adjudication of pharmacy claims.  NCPDP is a non-profit organization that develops industry standards for electronic healthcare transactions used in prescribing, dispensing, monitoring, managing, and paying for medications and pharmacy services.[11]  The NCPDP standards have been adopted in federal legislation, including the Health Insurance Portability and Accountability Act ("HIPAA"), the Medicare Modernization Act ("MMA"), the Health Information Technology for Economic and Clinical Health Act ("HITECH"), and Meaningful Use ("MU").[12]  For example, HIPAA requires uniform methods and codes for exchanging electronic information with health insurance plans. These standards are referred to as the NCPDP Telecommunication Standard.  HIPAA also requires prescribers to follow the NCPDP SCRIPT Standards when prescribing drugs under Medicare Part D.  42 C.F.R. §423.160.

36.    When a consumer presents a prescription claim at a pharmacy, key information such as the consumer's name, drug dispensed, and quantity dispensed is transmitted via interstate wire from the pharmacy to the correct third-party payor (or its agent) to process and adjudicate the

---

[11]    About NCPDP, https://www.ncpdp.org/About-Us (last visited Apr. 8, 2020).

[12]    *Id.*

claim.[13] The third-party payor instantaneously processes the prescription claim according to the benefits plan assigned to the consumer. The third-party payor electronically transmits a message back to the pharmacy via interstate wire indicating whether the drug and consumer are covered and, if so, the amount the pharmacy must collect from the consumer as a copayment, coinsurance, or deductible amount. Any portion of the drug price not paid by the consumer is borne by the third-party payor. The whole adjudication process occurs in a matter of seconds.

37.     Rite Aid, Plaintiffs, and members of the Class all participate in this automated and systematic claims adjudication process when RSP Drugs are filled.

38.     The out-of-pocket amount that consumers are required to pay (whether in the form of a copayment, coinsurance, or deductible amount) in order to receive the prescription is calculated based on the U&C price reported by Rite Aid. The out-of-pocket amount a consumer pays cannot exceed the U&C price. The drug reimbursement amount reported to third-party payors also cannot exceed the U&C price. Thus, the price reported and charged to Plaintiffs and the Class cannot exceed the U&C price. Upon information and belief, Rite Aid uniformly administers its deceptive U&C pricing scheme such that it uses the same inflated U&C price for a particular RSP Drugs that it reports and charges to Plaintiffs and the Class.

---

[13]     A third-party payor may utilize the services of a pharmacy benefit manager ("PBM") as its agent to administer its prescription drug benefit. PBMs essentially serve as an intermediary between third-party payors and the rest of the healthcare industry. PBMs' technical function is to administer health coverage providers' prescription benefit programs. Accordingly, PBMs develop coverage providers' formularies (the list of prescription benefits included in coverage at various pricing "tiers"), process claims, and negotiate with manufacturers. PBMs also contract with retail and community pharmacies. Contracts between PBMs and pharmacies provide for a payment rate for each prescription, plus a dispensing fee kept by the pharmacies. Pharmacies are also responsible for collecting patient cost-sharing payments (co-payments) and sending those to the PBMs or reducing the PBMs' or plans' share owed by that amount.

### C.    Pharmacies Are Required to Report the Cash Price for the Drug Being Dispensed as Their U&C Price

39.    As part of the adjudication process, a pharmacy must report the pharmacy's U&C price for the drug being dispensed.  Pharmacies are required to report their U&C prices for each prescription transaction using NCPDP's mandatory pricing segment code 426-DQ.[14]

40.    The term "usual and customary" is not ambiguous.  The U&C price submitted in the adjudication process is generally defined as the cash price charged to the general public, exclusive of sales tax or other amounts claimed.[15]  The following sources, among others, reflect the commonly accepted industry meaning of the term "usual and customary" price:

(a)    The NCPDP, which created standard billing forms used for drug claims, is a standard-setting organization that represents virtually every sector of the pharmacy services industry.  NCPDP authored explanatory materials for its billing forms that state that the "usual and customary" charge field on the billing form (field 426-DQ) means "amount charged cash customers for the prescription."  Congress authorized the Secretary of HHS to "adopt" standard billing forms (42 U.S.C. §1320d-1(a)), and, under that authority, the Secretary "adopted" the current NCPDP electronic form as the standard electronic health care claim form.  45 C.F.R. §162.1102 (a).  *See also* 42 C.F.R. §423.160 (incorporating NCPDP standards into the Medicare Part D program).

(b)    The Academy of Managed Care Pharmacy ("AMCP") is a professional association that includes health systems and PBMs.  An AMCP Guide to Pharmaceutical

---

[14]    *Telecommunication Version 5 Questions, Answers and Editorial Updates* at 38 (Feb. 2010), https://ncpdp.org/members/pdf/Version_5_questions_v35.pdf (last visited Apr. 8, 2020).

[15]    *See, e.g.*, Illinois Department of Healthcare and Family Services, *Handbook for Providers of Pharmacy Services*, https://www.illinois.gov/hfs/SiteCollectionDocuments/p200.pdf (last visited Apr. 8, 2020).

Payment Methods (October 2007) defines "usual and customary" price as "[t]he price for a given drug or service that a pharmacy would charge a cash-paying customer without the benefit of insurance provided through a payer or intermediary with a contract with the pharmacy." The Pharmaceutical Care Management Association, a national association dedicated to representing PBMs, utilizes a similar definition.

(c)     Several reports by the Government Accountability Office on "usual and customary" price trends in drug pricing, issued from August 2005 through February 2011, define the "usual and customary price" as "the price an individual without prescription drug coverage would pay at a retail pharmacy." *See*, *e.g.*, GAO Report, "Prescription Drugs: Trends in Usual and Customary Prices for Commonly Used Drugs," February 10, 2011.

(d)     The Code of Federal Regulations and the Medicare Prescription Drug Benefit Manual (Chapter 5, §10.2, Benefits and Beneficiary Protections, Rev. 9/30/11) define usual and customary price as "the price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug." 42 C.F.R. §423.100.

(e)     The same Manual (Chapter 14, §50.4.2, n.1) stated that the discounted prices that Wal-Mart charged to its customers "is considered Wal-Mart's 'usual and customary' price."

41.     Rite Aid knows exactly what is required and involved in reporting U&C prices. Rite Aid operates EnvisionRxOptions ("EnvisionRxOptions") as the PBM arm of Rite Aid.[16] Rite Aid acquired EnvisionRxOptions (then known as EnvisionRx) in 2015 to administer pharmacy

---

[16]     *Supra* note 5.

benefit programs and offer pharmacy benefit management services, including, among other things, claims processing.    As a PBM, EnvisionRxOptions maintains a network of participating pharmacies, which, of course, includes Rite Aid retail pharmacies, among others.

42.    The current EnvisionRxOptions "Provider Portal" is available to EnvisionRxOptions's network of participating pharmacies and "contains detailed explanations of certain conditions of participation in the EnvisionRx Pharmacy Network.  Procedures are outlined for the electronic submission of Pharmacy Claims.  Also contained are helpful contact numbers, payment terms, answers to common questions and [the] pricing and reimbursement process."[17]

43.    The Provider Portal states that the participating pharmacies are to submit claims for payment in NCPDP format.

44.    The Provider Portal states that pharmacies "may not collect copayments, coinsurances and deductibles that exceed your Pharmacy's [usual and customary price]."

**D.    Other Pharmacies Report Their Prescription Drug Discount Program Prices as Their U&C Prices**

45.    In 2006, the major retailers with pharmacy departments began offering discounts for prescription drugs.  These retailers were likely able to absorb lower margins on drug sales because pharmacy sales represented a low percentage of their total sales.

46.    For example, in September 2006, Wal-Mart began charging $4 for a 30-day supply of the most commonly prescribed generic drugs and $10 for a 90-day supply.  In November of that same year, Target began charging $4 for a 30-day supply of the most commonly prescribed generic drugs and $10 for a 90-day supply.[18]  Upon information and belief, Wal-Mart and Target report to health insurance plans their $4 per 30-day supply for prescription drugs as their U&C prices.

---

[17]    *Pharmacy Manual: Supplemental Prices, Procedure and Regulations*, EnvisionRX, Aug. 23, 2019, https://envisionrx.com/pdf/ProviderPortal.pdf (last visited Apr. 8, 2020).

[18]    *Target Expands $4 Program on Generics to All Pharmacies*, THE NEW YORK TIMES, Nov. 21, 2006, http://www.nytimes.com/2006/11/21/business/21drug.html (last visited Apr. 8, 2020).

47.     Shortly after the implementation of these programs, the Centers for Medicare & Medicaid Services ("CMS") offered guidance on the lower cash prices pharmacies were offering on generic prescriptions.[19]    In the October 11, 2006 guidance, CMS was careful to note the following:

> Wal-Mart recently introduced a program offering a reduced price for certain generics to its customers.  The low Wal-Mart price on these specific generic drugs is considered Wal-Mart's "usual and customary" price, and is not considered a one-time "lower cash" price.  Part D sponsors consider this lower amount to be "usual and customary" and will reimburse Wal-Mart on the basis of this price. To illustrate, suppose a Plan's usual negotiated price for a specific drug is $10 with a beneficiary copay of 25% for a generic drug. Suppose Wal-Mart offers the same generic drug throughout the benefit for $4.  The Plan considers the $4 to take place of the $10 negotiated price.  The $4 is not considered a lower cash price, because it is not a one-time special price.  The Plan will adjudicate Wal-Mart's claim for $4 and the beneficiary will pay only a $1 copay, rather than a $2.50 copay.  This means that both the Plan and the beneficiary are benefiting from the Wal-Mart "usual and customary" price.[20]

**E.     Rite Aid's RSP Prices Are Its True U&C Prices for RSP Drugs**

48.     In 2007, Rite Aid created the RSP – a loyalty program targeted to cash customers – to compete with the major retailers' prices for prescription drugs.

49.     Upon information and belief, Rite Aid implemented the RSP as a scheme to maximize reimbursements from third-party payors and payments from consumers through deceptively inflated U&C prices, while still remaining competitive for cash-paying prescription drug customers.

---

[19]     CMS, *HPMS Q & A – Lower Cash Price Policy*, CENTER FOR BENEFICIARY CHOICES, Oct. 11, 2006, https://www.cms.gov/Medicare/Prescription-Drug-CoveragePrescriptionDrugCovContra/Downloads/QADiscountsandTrOOP_100606.pdf (last visited Apr. 8, 2020).

[20]     *Id*.

50.     According to Rite Aid, the RSP is a discount prescription drug program that offers savings on thousands of brand and generic prescription drugs.  The RSP is not a third-party health insurance plan; it is not insurance or a substitute for insurance.  Enrollment in the RSP was, and continues to be, open to cash-paying customers.  Rite Aid does not charge individuals to join the RSP.  Rite Aid does not advertise the RSP in its pharmacies, including at the point of purchase, and further, its pharmacists do not advise customers using insurance that the drug being purchased may be cheaper through the RSP.

51.     Rite Aid, through its RSP, allows cash-paying customers to purchase thousands of brand name and generic prescription drugs at discounted prices.[21]

52.     Examples of prescription drugs included on Rite Aid's RSP formulary include some of the most commonly used generics for cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders, and other common ailments.  RSP Prices apply to prescription drugs listed on the formulary.

53.     Rite Aid designed the RSP to appeal to price-sensitive customers, who, for the most part, take long-term maintenance medications.  Customers who take maintenance medications, many of whom are elderly or disabled, are the most valuable to Rite Aid.

54.     Rite Aid's RSP is not a special, limited, or a one-time offer.  Any pharmacy patron is eligible to participate in the program.  Rite Aid does not limit the eligibility for, or duration of the availability of, RSP Prices other than to require cash payment.

---

[21]     https://www.riteaid.com/pharmacy/prescription-savings#rx-savings-program.        (last accessed Mar. 5, 2020).

55.     Thus, Rite Aid RSP Prices clearly fit within the accepted industry meaning and Rite Aid's own understanding of "usual and customary" prices, and thus, represent Rite Aid's true U&C prices for the RSP Drugs.

**F.     Rite Aid Improperly Overcharges Plaintiffs and the Class for RSP Drugs**

56.     As part of the standardized prescription claims adjudication process, Rite Aid is required to accurately state its U&C price for the prescription being dispensed, in accordance with the NCPDP requirements.

57.     The industry standards that Rite Aid follows provide that the U&C price is the cash price offered to the general public for specific drugs.  Rite Aid offers the RSP Price as the cash price to the general public and the RSP Price is, in fact, the price paid by Rite Aid's cash-paying customers.  Thus, under industry standards and Rite Aid's own definition, the RSP Price is Rite Aid's U&C price for the RSP Drugs.  Rite Aid also knows that it is industry standard that the drug reimbursement price and the amount collected from the consumer cannot exceed the U&C price.

58.     Yet, Rite Aid charges vastly different prices for RSP Drugs depending on whether the payer is an insurer or a cash-paying RSP customer.  While RSP customers received discounts on thousands of drugs they purchase and can pay $9.99 for 30-day prescriptions and $15.99 for 90-day prescriptions of RSP Drugs, Plaintiffs and members of the Class pay much higher prices.  Accordingly, Rite Aid effectively maintains an improper dual U&C pricing structure for RSP Drugs.

59.     Rite Aid knowingly fails to report, and continues to fail to report, the RSP Price – its true "usual and customary" price – on claims for reimbursement for RSP Drugs submitted to third-party payors and charges made to consumers, like Plaintiffs and the Class.

60.    When Rite Aid adjudicates prescription claims for RSP Drugs, it misrepresents the amount of its U&C price on the reimbursement claims forms that Rite Aid submits to third-party payors.  In the field requiring Rite Aid to report its U&C price, Rite Aid does not report its RSP price, which is its true U&C price, but instead reports a much higher price.  Rite Aid thus ignores the true U&C prices, and instead knowingly and improperly charges vastly inflated prices to third-party payors.  As a result, because the amount a consumer must pay is dictated by the inflated U&C price communicated to the third-party payor, the amount that Rite Aid charges consumers is also artificially inflated.

61.    Through its deceptive pricing scheme, Rite Aid has overcharged Plaintiff Monmouth, and as a result, Plaintiff Monmouth has overpaid for RSP Drugs in thousands of transactions.  Examples of such overpayments by Plaintiff Monmouth are indicated in the chart.

| Prescription | Date Purchased | Days' Supply | TPP Paid | RSP (U&C) Price |
|---|---|---|---|---|
| **Rx 1** | 1/9/07 | 30 | $64.59 | $9.99 |
| **Rx 2** | 1/20/07 | 30 | $12.43 | $9.99 |
| **Rx 3** | 2/10/07 | 10 | $37.77 | $9.99 |
| **Rx 4** | 6/16/07 | 30 | $34.22 | $9.99 |
| **Rx 5** | 2/19/08 | 30 | $26.20 | $9.99 |
| **Rx 6** | 2/9/09 | 30 | $11.75 | $9.99 |
| **Rx 7** | 5/13/10 | 30 | $35.85 | $9.99 |
| **Rx 8** | 10/9/12 | 30 | $14.33 | $9.99 |
| **Rx 9** | 1/16/14 | 30 | $13.95 | $9.99 |
| **Rx 10** | 8/5/15 | 14 | $20.15 | $9.99 |
| **RX 11** | 9/9/16 | 30 | $15.66 | $9.99 |
| **Rx 12** | 3/29/17 | 20 | $29.74 | $9.99 |
| **Rx 13** | 11/4/17 | 30 | $15.84 | $9.99 |
| **Rx 14** | 6/27/18 | 30 | $19.21 | $9.99 |
| **Rx 15** | 6/26/19 | 30 | $15.12 | $9.99 |
| **TOTAL PAID** | | | **$366.81** | |
| **TOTAL RSP PRICE** | | | | **$149.85** |

| OVERPAYMENT | | | | $216.96 |
|---|---|---|---|---|

62.     Plaintiff Monmouth and similarly situated Class members paid for prescriptions of their beneficiaries.  These payments arose from Rite Aid's sales of RSP Drugs to beneficiaries for the medically-necessary treatment of illnesses, which qualify as transactions that resulted in the sale of goods to consumers for personal use.

63.     Similarly, through its deceptive pricing scheme, Rite Aid has overcharged Plaintiff Scavello, and as a result, Plaintiff Scavello has overpaid for her RSP Drugs by at least $44.68, as indicated in the chart:

| Prescription | Date Purchased | Days' Supply | Plaintiff Paid | RSP (U&C) Price |
|---|---|---|---|---|
| DRUG 1 | 03/11/2017 | 90 | $36.16 | $24.99 |
| DRUG 2 | 06/09/2017 | 90 | $36.16 | $24.99 |
| DRUG 3 | 09/06/2017 | 90 | $36.16 | $24.99 |
| DRUG 4 | 12/07/2017 | 90 | $36.16 | $24.99 |
| TOTAL PAID | | | $144.64 | |
| TOTAL RSP PRICE | | | | $99.96 |
| OVERPAYMENT | | | | $44.68 |

64.     Thus, Rite Aid's failure to maintain and report accurate U&C prices for RSP Drugs in Rite Aid's pharmacy computer system has systematically injured and will continue to injure Plaintiffs and the Class.

65.     In short, the RSP program allows Rite Aid to compete with its competitors' discounted prices for its cash-paying customers while still receiving higher payments from its customers who carry insurance.  Rite Aid uses the RSP program to hide its true U&C prices from consumers and third-party payors, which allows Rite Aid to continue charging consumers and third-party payors a higher rate for RSP Drugs than cash-paying customers through the RSP

program. The RSP program enables Rite Aid to unlawfully report artificially inflated U&C prices to third-party payors and to collect from consumers artificially inflated copays.

66.     Upon information and belief, Rite Aid uses the same inflated U&C price for any given RSP Drug (of the same strength and dosage) that it reports and charges to Plaintiffs and the Class. Thus, the manner in which Rite Aid fails to report and incorporate the RSP Prices into its U&C prices for the RSP Drugs is uniform and systematically applied through Rite Aid's electronic prescription claims adjudication process.

67.     Plaintiffs and members of the Class have no way of determining on their own whether the price Rite Aid submits as its U&C price is, in fact, the most common price offered to cash-paying members of the general public. Moreover, Plaintiffs and members of the Class were unaware that Rite Aid's representation at the point of purchase for the RSP Drugs that the copayment demanded and charged was not accurate.

68.     Rite Aid also did not and does not inform Plaintiffs and members of the Class, that RSP Prices for RSP Drugs are lower than the amount Rite Aid was charging them. Rite Aid either wrongfully conceals or omits such information by failing to tell consumers and third-party payors about the RSP program, or by misrepresenting to consumers and third-party payors that the RSP program would not apply to their purchases.

69.     For instances where the copayment charged to a customer was lower than the RSP price for the same drug, customers were unaware, and incapable of ascertaining, that their copayment would have been lower but for Rite Aid's practice of illegally submitting inflated "usual and customary" prices to third-party payors.

70.     As part of its fraudulent price scheme, Rite Aid has reported and charged U&C prices for RSP Drugs that, as demonstrated by the charts below, are up to 10 times the U&C prices reported by some of its most significant competitors and up to 4 times its own RSP Prices.

71.     The chart below shows U&C prices submitted to New York's Medicaid program for the purposes of claims adjudication.  The U&C prices submitted by Rite Aid unequivocally are inflated as compared with its competitors' and its own RSP prices.

| DRUG | SUFFOLK COUNTY, NY | | | | |
|---|---|---|---|---|---|
| | WalMart | Target | Shoprite | Rite Aid | Rite Aid (RSP Price) |
| Carvedilol, 6.25 mg TAB, quantity 60 | $4.00 | $4.00 | $9.99 | $43.98 | $10.00 |
| Lisinopril, 20 mg TAB, quantity 30 | $4.00 | $4.00 | $3.99 | $17.33 | $10.00 |
| Lisinopril/HCTZ 20, 12.5 mg TAB, quantity 30 | $4.00 | $4.00 | $9.99 | $29.99 | $10.00 |
| Metformin HCL, 1,000 mg TAB, quantity 60 | $4.00 | $4.00 | $9.99 | $37.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $4.00 | $4.00 | $3.99 | $19.66 | $10.00 |
| Warfarin, 5 mg TAB, quantity 30 | $4.00 | $4.00 | $3.99 | $18.76 | $10.00 |
| Fluoxetine, 20 mg, quantity 30 | $4.00 | $4.00 | $9.99 | $28.39 | $10.00 |

72.    The chart below shows the U&C prices submitted to Florida's Medicaid program for purposes of claims adjudication.  The U&C prices submitted by Rite Aid unequivocally are inflated as compared with its competitors' and its own RSP prices.

| DRUG | ORLANDO, FL | | | |
|---|---|---|---|---|
| | WalMart | Winn-Dixie | Rite Aid | Rite Aid (RSP Price) |
| Carvedilol, 12.5 mg TAB, quantity 60 | $4.00 | $41.99 | $47.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $29.73 | N/A | $37.99 | $10.00 |
| Warfarin, 5 mg TAB, quantity 30 | $4.00 | $21.99 | $95.99 | $10.00 |

73.    The chart below shows U&C prices submitted to Pennsylvania's Medicaid program for the purposes of claims adjudication.  The U&C prices submitted by Rite Aid unequivocally are inflated as compared with its competitors' and its own RSP prices.

| DRUG | PHILADELPHIA, PA | | | |
|---|---|---|---|---|
| | WalMart | Shoprite | Rite Aid | Rite Aid (RSP Price) |
| Carvedilol, 12.5 mg TAB, quantity 60 | $4.00 | $7.49 | $47.99 | $10.00 |
| Lisinopril, 20 mg TAB, quantity 30 | $4.00 | $2.99 | $18.99 | $10.00 |
| Lisinopril/HCTZ 20, 12.5 mg TAB, quantity 30 | $9.00 | $3.99 | $23.99 | $10.00 |
| Metformin HCL, 1000 mg TAB, quantity 60 | $9.00 | $4.00 | $31.99 | $10.00 |
| Metoprolol, 50 mg TAB, quantity 60 | $4.00 | $5.99 | $21.69 | $10.00 |
| Warfarin, 1 mg TAB, quantity 30 | $4.00 | $4.00 | $20.69 | $10.00 |

23

## V.    CLASS ACTION ALLEGATIONS

74.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and the following Nationwide Class (under the laws of Pennsylvania) and State Classes (collectively, the "Class"):

**Nationwide Class**

All persons or entities in the United States and its territories who, during the applicable liability period (the "Class Period"), purchased and/or paid for some or all of the purchase price for prescription drugs that Rite Aid included in its Rx Savings Program ("RSP") formulary for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries. For purposes of the Class definition, persons or entities "purchased" prescription drugs that Rite Aid included in its RSP formulary if they paid or reimbursed some or all of the purchase price.

**State Classes**

All persons or entities in [California, Connecticut, Delaware, Georgia, Indiana, Kentucky, Louisiana, Maine, Maryland, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Vermont, and Virginia] who, during the applicable liability period (the "Class Period"), purchased and/or paid for some or all of the purchase price for prescription drugs that Rite Aid included in its Rx Savings Program ("RSP") formulary for consumption by themselves, their families, or their members, employees, insureds, participants, or beneficiaries. For purposes of the Class definition, persons or entities "purchased" prescription drugs that Rite Aid included in its RSP formulary if they paid or reimbursed some or all of the purchase price.

75.    Excluded from each Class are:

(a)    Persons in California who, during the Class Period, purchased prescription drugs that Rite Aid included in its RSP formulary. For avoidance of doubt, this exclusion applies to claims by individual consumers in California to recover for their own out-of-pocket losses and not to claims by TPPs for losses that TPPs have suffered as a result of their beneficiaries' purchases in California of prescription drugs that Rite Aid included in its RSP formulary.

(b)    Each Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns;

(c)    All governmental entities, except for governmental-funded employee benefit plans;

(d)    All persons or entities who purchased RSP Drugs for purposes of resale;

(e)    Any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

76.    <u>Numerosity</u>: The proposed Class consists of at least hundreds of thousands, and likely millions, of individual Rite Aid customers as well as numerous third-party payors, making joinder of all members impractical.  The exact size of the Class and the identities of the individual members thereof are ascertainable through Rite Aid's records, including, but not limited to, their billing and collection records.

77.    <u>Superiority of Class Action</u>: Plaintiffs and the Class suffered, and will continue to suffer, harm as a result of Rite Aid's unfair, deceptive, unlawful, and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impractical.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome for the courts in which the individual litigations would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies caused by Rite Aid's common course of conduct.  The class action device allows a single court to provide the benefits of uniform adjudication, judicial economy, and the fair and equitable handling of all the Class members' claims in a single forum.

78.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class members because Plaintiffs and all of the Class members' claims originate from the same willful conduct, practice, and procedure on the part of Rite Aid, and Plaintiffs possess the same interests and have suffered the same injuries as each Class member.  Like all members of the proposed Class, Plaintiffs were overcharged by Rite Aid for RSP Drugs who reported and charged them prices that Rite Aid fraudulently inflated far above its U&C prices.

79.    <u>Common Questions of Law and Fact Predominate</u>: There are questions of law and fact common to Plaintiffs and the Class members, and those questions substantially predominate over any questions that may affect individual members of the Class within the meaning of Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).  Common questions of fact and law include:

(a)    whether Rite Aid artificially inflated the U&C prices it reported and charged for RSP Drugs above the price that cash-paying Rite Aid customers pay for the same prescriptions;

(b)    whether Rite Aid omitted and concealed material facts from its communications and disclosures regarding its pricing scheme;

(c)    whether Rite Aid has overcharged and continues to overcharge Plaintiffs and Class members who paid for RSP Drugs;

(d)    whether Rite Aid engaged in unfair methods of competition, unconscionable acts or practices, and unfair, deceptive, and unlawful acts or practices in connection with the pricing and sale of RSP Drugs;

(e)    whether, as a result of Rite Aid's misconduct, Plaintiffs and Class members have to seek restitution and damages, and if so, the amount of restitution and damages;

(f)    whether, as a result of Rite Aid's misconduct, Plaintiffs and the Class members are entitled to equitable or other relief, and, if so, the nature of such relief; and

(g)    whether, as a result of Rite Aid's misconduct, Rite Aid should be enjoined from engaging in such conduct in the future.

80.    <u>Ascertainability</u>: The Class is ascertainable because, on information and belief, Defendants keep and collect the information of each Class member in a detailed electronic database, which contains details regarding Class members' purchases of prescription drugs that include, among other things, the Class members' names, addresses, dates of purchase, and amounts of each purchase.

81.    The Class has a well-defined community of interest.  Rite Aid has acted and failed to act on grounds generally applicable to Plaintiffs and Class members, requiring the Court's imposition of uniform and final injunctive relief and corresponding declaratory relief to ensure compatible standards of conduct toward the Class.

82.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class members.

83.    Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

84.    Plaintiffs and the Class members had neither actual nor constructive knowledge of the facts constituting their claims for relief until recently.

85.    Plaintiffs and the Class members did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the unlawful conduct alleged herein until recently.

86.    Rite Aid's pricing scheme did not reveal facts that would have put Plaintiffs or the Class members on notice that Rite Aid was reporting and charging inflated prices for RSP Drugs. Rite Aid misrepresented at the point of purchase that the price charged was accurate; and Rite Aid omitted at the point of purchase that Plaintiffs were not receiving any benefit from their insurance.

87.    Because Rite Aid did not disclose the pricing scheme, Plaintiffs and the Class members were unaware of Rite Aid's unlawful conduct alleged herein and did not know that they were paying artificially inflated prices for RSP Drugs.

88.    Not only did Rite Aid fail to disclose material information, but it also actively misled consumers by inflating and misrepresenting U&C prices for RSP Drugs to Plaintiffs that were far higher than the RSP Prices (the actual U&C prices).  Rite Aid also failed to post drug prices in a clear manner and in a way that would alert Plaintiffs and the Class members to the artificially inflated prices charged by Rite Aid.  By so doing, Rite Aid misled Plaintiffs and the Class members into overpaying for RSP Drugs.

89.    Rite Aid's affirmative acts alleged herein, including acts in furtherance of its unlawful pricing scheme, were wrongfully concealed and carried out in a manner that precluded detection.

90.    Under the circumstances alleged, Rite Aid owed a duty to Plaintiffs and members of the Class to provide them with accurate information regarding the prices of their prescription drugs.

91.    The relationship between Rite Aid and Plaintiffs and the Class is one in which Rite Aid has an obligation of reasonable conduct for the benefit of the Plaintiffs and the Class.  As a pharmacy providing prescription medication to consumers, Rite Aid owes a duty to provide accurate information regarding the prices of prescription drugs, including RSP Drugs. Furthermore, as a pharmacy, Rite Aid is bound to the Code of Ethics for Pharmacists, which mandates Rite Aid's pharmacies and the pharmacists within the pharmacies to tell the truth and to assist individuals in making the best use of medications.[22]  Plaintiffs and the Class reasonably expected Rite Aid to help "achieve optimum benefit from their medications, to be committed to their welfare, and to maintain their trust."[23]

92.    The relationship between Rite Aid and Plaintiffs and the Class is one in which Rite Aid has an obligation of reasonable conduct for the benefit of Plaintiffs and the Class.  As an entity that is in the business of supplying information for the guidance of both third-party payors and consumers in their business transactions with Rite Aid, Rite Aid owes a duty to Plaintiffs and the Class to provide them with accurate information regarding the U&C price of prescription drugs, including RSP Drugs.

93.    Rite Aid also had a duty to Plaintiffs and members of the Class to provide them with accurate information regarding the prices of their prescription drugs because it was entirely

---

[22]    Code of Ethics, American Pharmacists Association, https://www.pharmacist.com/code-ethics (last visited Apr. 8, 2020).

[23]    *Id*.

likely and foreseeable that Plaintiffs and the Class would be injured when they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct. Rite Aid knows exactly what is required and involved in reporting U&C prices given that Rite Aid's own Provider Portal requires Rite Aid not to exceed the U&C prices when submitting claims, and thus to charge the lower RSP price to Plaintiffs and the Class.  Imposing a duty to provide Plaintiffs and the Class with accurate price information places no burden on Rite Aid because Rite Aid already is required to accurately report to programs like Medicare and Medicaid its U&C price for prescriptions being dispensed and to not seek reimbursement for a prescription at a price that is inflated over the price it charges self-paying customers for the exact same drug (*i.e.*, the U&C price).  *See*, *e.g.*, 31 U.S.C. §§3729, *et seq.*; 42 U.S.C. §1320c-5(a)(1); 42 U.S.C. §1320a-7(b)(6); 42 C.F.R. §§423.505(i)(4)(iv), (k)(3); 42 C.F.R. §447.512(b).

94.    Plaintiffs and the Class members could not have discovered the alleged unlawful activities at an earlier date by exercise of reasonable diligence because Rite Aid employed deceptive practices and techniques of secrecy to avoid detection of its activities. Rite Aid fraudulently concealed its activities by various means and methods, including misrepresentations regarding the real U&C prices of the RSP Drugs.

95.    Because Rite Aid affirmatively concealed its pricing scheme, Plaintiffs and the Class had no knowledge until immediately prior to the filing of this Complaint. Prior to this time, Plaintiffs were not aware of the alleged fraudulent activities or information which would have caused a reasonably diligent person to investigate whether Rite Aid committed the actionable activities detailed herein.

96.     As a result of Rite Aid's fraudulent concealment, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the Class members have as a result of the unlawful conduct alleged in this Complaint.

97.     Regardless, Rite Aid's illegal scheme is continuous, and the pharmacy violates the law each time it charges inflated copayments to both new and repeat customers.

## VII.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Negligent Misrepresentation

### Asserted by Plaintiffs on Behalf of the Nationwide Class or, in the Alternative, the State Classes

98.     Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

99.     Plaintiffs allege this claim on behalf of themselves and the Nationwide Class under the laws of the Pennsylvania.  In the alternative, Plaintiffs bring this claim on behalf of each State Class under the law of each state in which Plaintiffs and members of each State Class purchased prescription drugs that Rite Aid included in its RSP formulary.

100.     Under the circumstances alleged, Rite Aid owed a duty to Plaintiffs and members of the Class to provide them with accurate information regarding the prices of their prescription drugs.

101.     The relationship between Rite Aid and Plaintiffs and the Class is one such that Rite Aid has an obligation of reasonable conduct for the benefit of the Plaintiffs and the Class.  As a pharmacy providing prescription medications to consumers, Rite Aid owes a duty to provide accurate information regarding the prices of prescription drugs, including RSP Drugs. Furthermore, as a pharmacy, Rite Aid is bound to the Code of Ethics for Pharmacists, which

mandates Rite Aid's pharmacies and the pharmacists within the pharmacies to tell the truth and to assist individuals in making the best use of medications.[24]  Plaintiffs and the Class reasonably expected Rite Aid to help "achieve optimum benefit from their medications, to be committed to their welfare, and to maintain their trust."[25]

102.    The relationship between Rite Aid and Plaintiffs and the Class is one in which Rite Aid has an obligation of reasonable conduct for the benefit of Plaintiffs and the Class.  As an entity that is in the business of supplying information for the guidance of both third-party payors and consumers in their business transactions with Rite Aid, Rite Aid owes a duty to Plaintiffs and the Class to provide them with accurate information regarding the U&C price of prescription drugs, including RSP Drugs.

103.    Rite Aid also had a duty to Plaintiffs and members of the Class to provide them with accurate information regarding the prices of their prescription drugs because it was entirely likely and foreseeable that Plaintiffs and the Class would be injured when they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct. Rite Aid knows exactly what is required and involved in reporting U&C prices, given that Rite Aid's own Pharmacy Manual defines U&C and application of that definition would have required Rite Aid to charge the lower RSP price to Plaintiffs and the Class.  Imposing a duty to provide Plaintiffs and the Class with accurate price information places no burden on Rite Aid because Rite Aid already is required to accurately report to programs like Medicare and Medicaid its U&C price for prescriptions being dispensed and to not seek reimbursement for a prescription at a price that is inflated over the price it charges self-paying customers for the exact same drug (*i.e.*, the U&C

---

[24]    Code of Ethics, *supra* note 22.

[25]    *Id*.

price).  *See*, *e.g.*, 31 U.S.C. §§3729, *et seq.*; 42 U.S.C. §1320c-5(a)(1); 42 U.S.C. §1320a-7(b)(6);
42 C.F.R. §§423.505(i)(4)(iv), (k)(3); 42 C.F.R. §447.512(b).

104.    Rite Aid materially misrepresented and concealed the true U&C prices of RSP
Drugs.

105.    The true U&C price is material to Plaintiffs and the Class because the
misrepresentation and concealment of the true U&C price of RSP Drugs causes them to be unable
to accurately evaluate the cost of the prescriptions being purchased and, in fact, causes them to
overpay for these prescriptions.  Had Plaintiffs known Rite Aid was reporting to and charging them
inflated and false amounts, they would not have proceeded with the transactions.

106.    Rite Aid made such misrepresentations and omissions to Plaintiffs and the Class
each time Rite Aid reported and charged artificially inflated prices for RSP Drugs.

107.    Rite Aid had no reasonable grounds to believe that these misrepresentations and
omissions were true.  The prices Rite Aid reported to third-party payors were substantially (and
unjustifiably) higher than the prices Rite Aid charged under its RSP program to cash-paying
customers.

108.    Rite Aid intended to induce Plaintiffs and the members of the Class to rely on its
misrepresentations and omissions.  Rite Aid knew that Plaintiffs and the members of the Class
would rely on the accuracy of the prices Rite Aid reported to and charged them, and that, as a
result, Plaintiffs and the members of the Class would pay higher prices than the true U&C prices
for RSP Drugs.

109.    Plaintiffs and members the Class justifiably relied on Rite Aid's misrepresentations
and omissions in that Plaintiffs and the Class would not have purchased or paid for RSP Drugs
from Rite Aid at falsely inflated amounts but for Rite Aid's misrepresentations and omissions.

Plaintiffs and the Class' reliance on Rite Aid's misrepresentations and omissions is, thus, to their detriment.

110.    As a proximate result of Rite Aid's negligent conduct, Plaintiffs and the Class have been damaged because they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

111.    Rite Aid is therefore liable to Plaintiffs and the Class for the damages they sustained.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

**Asserted by Plaintiffs on Behalf of the Nationwide Class or, in the Alternative, the State Classes**

112.    Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

113.    Plaintiffs allege this claim on behalf of themselves and the Nationwide Class under the laws of the Pennsylvania.  In the alternative, Plaintiffs bring this claim on behalf of each State Class under the law of each state in which Plaintiffs and members of each State Class purchased prescription drugs that Rite Aid included in its RSP formulary.

114.    By means of Rite Aid's wrongful conduct alleged herein, Rite Aid knowingly reported to and charged Plaintiffs and the Class inflated prices for RSP Drugs in a manner that is unfair and unconscionable and violates the fundamental principles of justice, equity, and good conscience.

115.    Rite Aid knowingly received, appreciated, and retained wrongful benefits and funds from Plaintiffs and the Class.  In so doing, Rite Aid acted with conscious disregard for the rights of Plaintiffs and the Class.

116.    As a result of Rite Aid's wrongful conduct as alleged herein, Rite Aid has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

117.    Rite Aid's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

118.    Under the common law doctrine of unjust enrichment, it is inequitable for Rite Aid to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of artificially inflated prices on Plaintiffs and the Class in an unfair and unconscionable manner.  Rite Aid's retention of such funds under the circumstances alleged herein violates the fundamental principles of justice, equity, and good conscience and therefore constitutes unjust enrichment.

119.    Plaintiffs and the Class did not confer these benefits knowingly or gratuitously, and it would be inequitable and unjust for Rite Aid to retain these wrongfully obtained proceeds.

120.    Rite Aid is therefore liable to Plaintiffs and the Class for restitution in the amount of Rite Aid's wrongfully obtained profits.

## THIRD CLAIM FOR RELIEF

### Fraud

**Asserted by Plaintiffs on Behalf of the Nationwide Class or, in the Alternative, the State Classes**

121.    Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

122.    Plaintiffs allege this claim on behalf of themselves and the Nationwide Class under the laws of the Pennsylvania.  In the alternative, Plaintiffs bring this claim on behalf of each State Class under the law of each state in which Plaintiffs and members of each State Class purchased prescription drugs that Rite Aid included in its RSP formulary.

123.    Rite Aid materially misrepresented and concealed the true U&C prices of RSP Drugs.

124.    The true U&C price is material to Plaintiffs and the Class because the misrepresentation and concealment of the true U&C price of RSP Drugs causes them to be unable to accurately evaluate the cost of the prescriptions being purchased and, in fact, causes them to overpay for those prescriptions. Had Plaintiffs known Rite Aid was reporting to and charging them inflated and false amounts, they would not have proceeded with the transactions.

125.    Rite Aid made such misrepresentations and omissions to Plaintiffs and the Class each time Rite Aid reported and charged artificially inflated prices for RSP Drugs.

126.    Rite Aid made these misrepresentations and omissions knowingly, or at least with reckless disregard of their falsity, given that Rite Aid knew the prices it reported to third-party payors and charged to consumers were substantially (and unjustifiably) higher than the prices Rite Aid's charged under its RSP program to cash-paying customers.

127.    Rite Aid intended to induce the Plaintiffs and the members of the Class to rely on its misrepresentations and omissions. Rite Aid knew that Plaintiffs and the members of the Class would rely on the accuracy of the price Rite Aid reported to and charged them, and that, as a result, Plaintiffs and the members of the Class would pay higher than the true U&C prices for RSP Drugs.

128.    Plaintiffs and members of the Class justifiably relied on Rite Aid's misrepresentations and omissions in that Plaintiffs and the Class would not have purchased or paid for RSP Drugs from Rite Aid at falsely inflated amounts but for Rite Aid's misrepresentations and omissions. Plaintiffs and the Class' reliance on Rite Aid's misrepresentations and omissions is, thus, to their detriment.

129.    As a proximate result of Rite Aid's conduct, Plaintiffs and the members of the Class have been damaged because they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

130.    Rite Aid is therefore liable to Plaintiffs and the Class for the damages they sustained.

## FOURTH CLAIM FOR RELIEF

### Violation of the Connecticut Unfair Trade Practices Act

**Asserted by Plaintiff Monmouth on Behalf of the Connecticut Members of the Class ("Connecticut Class")**

131.    Plaintiff Monmouth repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

132.    Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the Connecticut Class, who are third-party payors either located in Connecticut or with beneficiaries that made purchases of RSP Drugs at Rite Aid in Connecticut for which the third-party payor was overcharged.

133.    Rite Aid, Plaintiff Monmouth, and the Connecticut Class, as legal entities, are "persons" within the meaning of Conn. Gen. Stat. Ann. §42-110a(3).

134.    Rite Aid's transactions with Plaintiff Monmouth and the Connecticut Class were "trade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. §42-110a(4), where Plaintiff Monmouth and members of the Connecticut Class paid all or part of the purchase price of RSP Drugs that Rite Aid sold to beneficiaries.

135.    Plaintiff Monmouth and the Connecticut Class have suffered an ascertainable loss as a result of Rite Aid's unfair or deceptive practices in the conduct of trade or commerce, in violation of Conn. Gen. Stat. Ann. §42-110a, *et. seq.*, in connection with the sale of RSP Drugs

paid for by Plaintiff Monmouth and the Connecticut Class. These unfair or deceptive practices, included, among other things:

    (a)    reporting to and charging Plaintiff Monmouth and the Connecticut Class artificially inflated U&C prices for the RSP Drugs;

    (b)    communicating to and charging the beneficiaries of Plaintiff Monmouth and the Connecticut Class (or its beneficiaries) artificially inflated copayments, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

    (c)    concealing from Plaintiff Monmouth and the Connecticut Class the true U&C prices of RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the Connecticut Class should have paid; and

    (d)    wrongfully obtaining monies from Plaintiff Monmouth and the Connecticut Class as a result of Rite Aid's deception.

136. Rite Aid has engaged, and continues to engage, in conduct that violates public policy as set forth in Conn. Agencies Regs. §17-2-97(2), requiring providers of prescription drugs to submit their usual and customary charge when billing the State for prescribed drugs and providing reimbursement at the lesser of the negotiated rate or usual and customary price, and Conn. Gen. Stat. §38a-479ooo, *et seq.*, requiring transparency into prescription drug costs and demonstrating the State's desire to control the rising cost of prescription drugs. Rite Aid gains an unfair advantage over its competitors, whose practices relating to other similar products must comply with these laws. Rite Aid's unjustified, inflated pricing of RSP Drugs is oppressive because it overcharges consumers and third-party payors. The pricing of RSP Drugs is unethical and unscrupulous because it is the result of Rite Aid's desire to achieve maximum financial gain

for medically-necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase RSP Drugs.

137.    Rite Aid's conduct, including misrepresenting the U&C price of RSP Drugs, is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have continued with the transaction but for Rite Aid's deceptive, false, and unfair acts and practices.  Consumers have thus overpaid for RSP Drugs.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Rite Aid's conduct.  Rite Aid willfully engaged in the unfair and/or deceptive practices described above and knew or should have known that these practices were unfair and/or deceptive.  Since consumers reasonably rely on Rite Aid's representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury.

138.    Rite Aid made these misrepresentations and omissions willfully and knowingly, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public.

139.    The facts that Rite Aid misrepresented and concealed were material to Plaintiff Monmouth and the Connecticut Class' decisions about whether to pay for Rite Aid's RSP Drugs, in that Plaintiff Monmouth and the Connecticut Class would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's unfair or deceptive acts and practices.

140.    Rite Aid intended for Plaintiff Monmouth and the members of the Connecticut Class to pay for RSP Drugs in reliance upon Rite Aid's unfair or deceptive acts and practices so that Plaintiff Monmouth and the Connecticut Class would reimburse claims at inflated rates.  Had

39

Plaintiff Monmouth and the Connecticut Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

141.    Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the Connecticut Class.

142.    As a direct and proximate result of Rite Aid's unfair or deceptive acts and practices, Plaintiff Monmouth and the Connecticut Class were deceived into paying artificially inflated prices for RSP Drugs and have suffered an ascertainable loss because they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

143.    Rite Aid therefore is liable to Plaintiff Monmouth and the Connecticut Class for the damages they sustained, plus statutory damages, exemplary damages, penalties, costs, and reasonable attorneys' fees, to the extent provided by law.  Plaintiff Monmouth and the other members of the Connecticut Class also seek injunctive relief pursuant to Conn. Gen. Stat. Ann. §42-110g(d), to enjoin Rite Aid's ongoing wrongful acts described herein.

## FIFTH CLAIM FOR RELIEF

### Violation of the Delaware Consumer Fraud Act

**Asserted by Plaintiff Monmouth on Behalf of the Delaware Members of the Class ("Delaware Class")**

144.    Plaintiff Monmouth repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

145.    Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the Delaware Class, who are third-party payors either located in Delaware or with beneficiaries that made purchases of RSP Drugs at Rite Aid in Delaware for which the third-party payor was overcharged.

146.  Rite Aid, Plaintiff Monmouth, and members of the Delaware Class, as legal entities, are "persons" within the meaning of Del. Code Ann. tit. 6, §2511(7).

147.  The RSP Drugs that Plaintiff Monmouth and members of the Delaware Class paid for, in whole or in part, are "merchandise" within the meaning of Del. Code Ann. tit. 6, §2511(6).

148.  Rite Aid's transactions with Plaintiff Monmouth and the Delaware Class were "sales" within the meaning of Del. Code Ann. tit. 6, §2511(8).

149.  Plaintiff Monmouth and the Delaware Class have been damaged by Rite Aid's act, use, or employment of deception, fraud, false pretense, false promise, misrepresentation, and/or the concealment, suppression, or omission of material facts, in violation of Del. Code Ann. tit. 6, §2511, *et seq*., in connection with the sale of RSP Drugs paid for by Plaintiff Monmouth and the Delaware Class, including, among other things:

    (a)  reporting to and charging Plaintiff Monmouth and the Delaware Class artificially inflated U&C prices for RSP Drugs;

    (b)  communicating to and charging the beneficiaries of Plaintiff Monmouth and the Delaware Class (or its beneficiaries) artificially inflated copayments, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

    (c)  concealing from Plaintiff Monmouth and the Delaware Class the true U&C prices of RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the Delaware Class should have paid; and

    (d)  wrongfully obtaining monies from Plaintiff Monmouth and the Delaware Class as a result of Rite Aid's deception.

41

150.  Rite Aid made these misrepresentations and omissions willfully and knowingly, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public.

151.  The facts that Rite Aid misrepresented or concealed were material to Plaintiff Monmouth and the Delaware Class' decisions about whether to pay for RSP Drugs, in that Plaintiff Monmouth and the Delaware Class would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's improper practices.

152.  Rite Aid intended for Plaintiff Monmouth and the members of the Delaware Class to pay for RSP Drugs in reliance upon Rite Aid's unfair or deceptive acts and practices so that Plaintiff Monmouth and the Delaware Class would reimburse claims at inflated rates.  Had Plaintiff Monmouth and the Delaware Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

153.  Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the Delaware Class.

154.  As a direct and proximate result of Rite Aid's conduct, Plaintiff Monmouth and the Delaware Class have been damaged because they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

155.  Rite Aid therefore is liable to Plaintiff Monmouth and the Delaware Class for the damages they sustained, plus statutory damages, exemplary damages, penalties, costs, and reasonable attorneys' fees, to the extent provided by law.

## SIXTH CLAIM FOR RELIEF

**Violation of the Georgia Fair Business Practices Act**

**Asserted by Plaintiff Monmouth on Behalf of the Georgia Members of the Class
("Georgia Class")**

156.    Plaintiff Monmouth repeats each and every allegation contained in paragraphs above and incorporates such allegations by reference herein.

157.    Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the Georgia Class, who are third-party payors either located in Georgia or with beneficiaries that made purchases of RSP Drugs at Rite Aid in Georgia for which the third-party payor was overcharged.

158.    Rite Aid, Plaintiff Monmouth, and the Georgia Class, as legal entities, are "persons" within the meaning of Ga. Code Ann. §10-1-392(24).

159.    At all relevant and material times as described herein, Rite Aid was engaged "in the conduct of consumer transactions and consumer acts or practices in trade or commerce" within the meaning of Ga. Code Ann. §10-1-393(a) with respect to the acts alleged herein, where Plaintiff Monmouth and the Georgia Class paid all or part of the purchase price of RSP Drugs that beneficiaries purchased from Rite Aid for their own personal, family, or household use.

160.    The Georgia Fair Business Practices Act declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. §10-1-393(a), including but not limited to "(11) Making false or misleading statements concerning the reasons for, existence of, or amounts of price reductions[.]"

161.    Plaintiff Monmouth and the Georgia Class have suffered losses because of Rite Aid's employment of unfair or deceptive acts or practices in the conduct of consumer transactions

and consumer acts or practices in omitting the existence of a price reduction in the sale of RSP Drugs, by, among other things:

    (a)    reporting to and charging Plaintiff Monmouth and the Georgia Class fraudulently inflated U&C prices for the RSP Drugs;

    (b)    communicating to and charging beneficiaries of Plaintiff Monmouth and the Georgia Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

    (c)    concealing from Plaintiff Monmouth and the Georgia Class the true U&C prices of the RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the Georgia Class members should have paid; and

    (d)    wrongfully obtaining monies from Plaintiff Monmouth and the Georgia Class as a result of its deception.

162.   Rite Aid's conduct constitutes an unfair practice in that Rite Aid sells RSP Drugs for a price that is unethical, oppressive, and unscrupulous. Rite Aid's unjustified, inflated pricing of RSP Drugs is oppressive because it overcharges consumers and third-party payors. The pricing of RSP Drugs is unethical and unscrupulous because it is the result of Rite Aid's desire to achieve maximum financial gain for medically-necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase RSP Drugs.

163.   Rite Aid gains an unfair advantage over its competitors, whose practices relating to other similar products must comply with this requirement, and generally harms the consuming public at large.

44

164.    Rite Aid's conduct, including misrepresenting the U&C price of RSP Drugs, is substantially injurious to consumers and competition.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have continued with the transaction but for Rite Aid's deceptive, false, and unfair acts and practices.  Consumers have thus overpaid for RSP Drugs.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Rite Aid's conduct.  Rite Aid willfully engaged in the unfair and/or deceptive practices described above and knew or should have known that these practices were unfair and/or deceptive.  Since consumers reasonably rely on Rite Aid's representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury.

165.    Rite Aid displayed price quotations through submission of claims for reimbursement for prescription drugs to Plaintiff Monmouth and the Georgia Class.  Rite Aid's price quotations were included in NCPDP field 426-DQ of its claims for reimbursement.

166.    Rite Aid represented that its price quotations included in NCPDP field 426-DQ were U&C prices.  Rite Aid's representation was false, and Rite Aid's true and accurate U&C prices for the prescription drugs for which it sought reimbursement from Plaintiff Monmouth and the Georgia Class were lower than the prices quoted by Rite Aid.

167.    Rite Aid made these misrepresentations and omissions willfully and knowingly, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public.

168.    The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff Monmouth and the Georgia Class' decisions about whether to pay for Rite Aid's RSP

Drugs, in that Plaintiff Monmouth and the Georgia Class would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's deceptive, fraudulent, false, and unfair acts and practices.

169.    Rite Aid intended for Plaintiff Monmouth and the members of the Georgia Class to pay for RSP Drugs in reliance upon Rite Aid's deceptive, fraudulent, false, and unfair acts and practices so that Plaintiff Monmouth and the Georgia Class would reimburse claims at inflated rates.   Plaintiffs and the Georgia Class justifiably relied on Rite Aid's misrepresentations and omissions.   Had Plaintiff Monmouth and the Georgia Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

170.    Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the Georgia Class.

171.    As a direct and proximate result of Rite Aid's deceptive, fraudulent, false, and unfair acts and practices, Plaintiff Monmouth and the Georgia Class were deceived into paying artificially inflated prices for RSP Drugs and have been damaged because they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

172.    Rite Aid is therefore liable to Plaintiff Monmouth and the members of the Georgia Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

173.    Plaintiff Monmouth provided pre-suit notice pursuant to Ga. Code Ann. §10-1-399(b) to Rite Aid by letter dated May 7, 2020, sent to Defendants via overnight delivery.

## SEVENTH CLAIM FOR RELIEF

### Violation of the Georgia Uniform Deceptive Trade Practices Act

**Asserted by Plaintiff Monmouth on Behalf of Georgia Members of the Class ("Georgia Class")**

174.   Plaintiff Monmouth repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

175.   Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the Georgia Class, who are third-party payors either located in Georgia or with beneficiaries that made purchases of RSP Drugs at Rite Aid in Georgia for which the third-party payor was overcharged.

176.   Rite Aid, Plaintiff Monmouth, and members of the Georgia Class, as legal entities, are "persons" within the meaning of Ga. Code Ann. §10-1-371(5).

177.   Rite Aid's transactions with Plaintiff Monmouth and the Georgia Class as described herein occurred in the course of Rite Aid's "business" within the meaning of Ga. Code Ann. §10-1-370, *et seq.*, where Plaintiff Monmouth and members of the Georgia Class paid all or part of the purchase price of RSP Drugs that Rite Aid sold to beneficiaries.

178.   The Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §10-1-372, prohibits "deceptive trade practices," which include "(11) [m]ak[ing] false or misleading statements concerning the reasons for, existence of, or amounts of price reductions; . . . or (12) [e]ngag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

179.   Plaintiff Monmouth and the Georgia Class have suffered losses and are likely to continue to suffering losses because of Rite Aid's employment of deceptive acts or practices in the

course of its business in omitting the existence of a price reduction in the sale of RSP Drugs, by, among other things:

       (a)      reporting to and charging Plaintiff Monmouth and the Georgia Class falsely inflated U&C prices for the RSP Drugs;

       (b)      communicating to and charging beneficiaries of Plaintiff Monmouth and the Georgia Class (or its beneficiaries) falsely inflated copayment, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

       (c)      concealing from Plaintiff Monmouth and the Georgia Class the true U&C prices of the RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the Georgia Class should have paid; and

       (d)      wrongfully obtaining monies from Plaintiff Monmouth and the Georgia Class as a result of its deception.

180.  More specifically, Rite Aid displayed price quotations through submission of claims for reimbursement for prescription drugs to Plaintiff Monmouth and the Georgia Class. Rite Aid's price quotations were included in NCPDP field 426-DQ of its claims for reimbursement.

181.  Rite Aid represented that its price quotations included in NCPDP field 426-DQ were U&C prices.  Rite Aid's representation was false, and Rite Aid's true and accurate U&C prices for the prescription drugs for which it sought reimbursement from Plaintiff Monmouth and the Georgia Class were lower than the prices quoted by Rite Aid.

182.  Rite Aid made these misrepresentations and omissions willfully and knowingly, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public.

183.    The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff Monmouth and the members of the Georgia Class about whether to pay for Rite Aid's RSP Drugs, in that they would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's deceptive, misleading, false, and unfair acts and practices.

184.    Rite Aid intended for Plaintiff Monmouth and the members of the Georgia Class to pay for RSP Drugs in reliance upon Rite Aid's deceptive acts and practices so that Plaintiff Monmouth and the Georgia Class would reimburse claims at inflated rates.  Had Plaintiff Monmouth and the Georgia Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

185.    Rite Aid's actions caused a likelihood of confusion or misunderstanding regarding the true and accurate U&C prices for the RSP Drugs dispensed to beneficiaries of Plaintiff Monmouth and the Georgia Class.

186.    Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment to Plaintiff Monmouth and the Georgia Class.

187.    As a direct and proximate result of Rite Aid's deceptive acts and practices, Plaintiff Monmouth and the Georgia Class were deceived into paying falsely inflated prices for RSP Drugs and have been damaged because they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

188.    Because Rite Aid's deceptive acts and practices are ongoing, Plaintiff Monmouth and the Georgia Class are likely to continue to be deceived and damaged by paying falsely inflated prices for RSP Drugs.  Consequently, Plaintiff Monmouth and the Georgia Class seek injunctive

relief to enjoin Rite Aid from excluding RSP prices from the U&C prices it reports on claims for reimbursement.

189.   Rite Aid therefore is liable to Plaintiff Monmouth and the members of the Georgia Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees, to the extent provided by law.

## EIGHTH CLAIM FOR RELIEF

### Violation of the Indiana Deceptive Consumer Sales Act ("IDCSA")

**Asserted by Plaintiff Monmouth on Behalf of the Indiana Members of the Class ("Indiana Class")**

190.   Plaintiff Monmouth repeats each and every allegation contained in paragraphs above and incorporates such allegations by reference herein.

191.   Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the Indiana Class, who are third-party payors either located in Indiana or with beneficiaries that made purchases of RSP Drugs at Rite Aid in Indiana for which the third-party payor was overcharged.

192.   Plaintiff Monmouth and the Indiana Class, as legal entities, are "persons" within the meaning of Ind. Code Ann. §24-5-0.5-2(a)(2).

193.   Rite Aid conducts "consumer transactions" within the meaning of Ind. Code Ann. §24-5-0.5-2(a)(1), where Plaintiff Monmouth and the Indiana Class paid all or part of the purchase price of RSP Drugs that beneficiaries purchased from Rite Aid for their own personal, family, or household use.

194.   Rite Aid, as a seller who regularly engages in or solicits consumer transactions, is a "supplier" within the meaning of Ind. Code Ann. §24-5-0.5-2(a)(3).

195.   RSP Drugs, as goods sold by Rite Aid to beneficiaries of Plaintiff Monmouth and the Indiana Class, are the "subject of a consumer transaction" within the meaning of Ind. Code Ann. §24-5-0.5-2(a)(4).

196.   The IDCSA prohibits two types of actionable deceptive acts.  The first is an "incurable" deceptive act, which means "a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code Ann. §24-5-0.5-2(8).  As described herein, Rite Aid has engaged in incurable deceptive acts, as it implemented a deceptive, inflated U&C pricing scheme to maximize reimbursements from third-party payors and payments from consumers through deceptively inflated U&C prices, while still remaining competitive for cash-paying prescription drug customers.  Rite Aid has uniformly implemented this scheme as part of a concerted, years'-long, pervasive campaign to mislead consumers and third-party payors that is ongoing and continues to this day.

197.   In addition, or in the alternative, Rite Aid has engaged in an "uncured" deceptive act, which applies when a customer who has been damaged gives notice to the supplier and the supplier either fails to offer to cure the deceptive act within thirty days or "the act has not been cured as to such customer within a reasonable time after the customer's acceptance of the offer to cure." Ind. Code Ann. 24-5-0.5-2(7)(A)-(B).  The cure must be "reasonably calculated to remedy a loss claimed by the consumer." Ind. Code Ann. 24-5-0.5-2(6)(A).  Plaintiff Monmouth provided pre-suit notice pursuant to Ind. Code Ann. §24-5-0.5-5 to Rite Aid by letter dated May 7, 2020, sent to Defendants via overnight delivery.  Rite Aid responded by letter dated June 2, 2020.  While Rite Aid couched its response to Plaintiff Monmouth's pre-suit notice letter as a critique of the effectiveness of notice and a request for additional information, in reality, the response was a thinly-veiled preview of Rite Aid's forthcoming motion to dismiss Plaintiff Monmouth's claims.

As of the date of this filing, which is more than 30 days after Plaintiff Monmouth's pre-suit notice letter to Rite Aid, Rite Aid has failed to offer any cure.

198.   The IDCSA declares "a supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction,"  Ind. Code Ann. §24-5-0.5-3(a), including by, but not limited to, representing "[t]hat a specific price advantage exists as to such subject of a consumer transaction, if it does not and if the supplier knows or should reasonably know that it does not."  Ind. Code Ann. §24-5-0.5-3(b)(6).

199.   Plaintiff Monmouth and the Indiana Class have suffered losses because of Rite Aid's employment of unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in omitting the existence of a price advantage in the sale of RSP Drugs, by, among other things:

   (a)    reporting to and charging Plaintiff Monmouth and the Indiana Class fraudulently inflated U&C prices for the RSP Drugs;

   (b)    communicating to and charging beneficiaries of Plaintiff Monmouth and the Indiana Class (or its beneficiaries) fraudulently inflated copayment, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

   (c)    concealing from Plaintiff Monmouth and the Indiana Class the true U&C prices of the RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the Indiana Class members should have paid; and

   (d)    wrongfully obtaining monies from Plaintiff Monmouth and the Indiana Class as a result of its deception.

200.    Rite Aid's conduct constitutes an unfair practice in that Rite Aid sells RSP Drugs for a price that is unethical, oppressive, and unscrupulous.  Rite Aid's unjustified, inflated pricing of RSP Drugs is oppressive because it overcharges consumers and third-party payors.  The pricing of RSP Drugs is unethical and unscrupulous because it is the result of Rite Aid's desire to achieve maximum financial gain for medically-necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase RSP Drugs.

201.    Rite Aid gains an unfair advantage over its competitors, whose practices relating to other similar products must comply with this requirement, and generally harms the consuming public at large.

202.    Rite Aid's conduct, including misrepresenting the U&C price of RSP Drugs, is substantially injurious to consumers and competition.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have continued with the transaction but for Rite Aid's deceptive, false, and unfair acts and practices.  Consumers have thus overpaid for RSP Drugs.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Rite Aid's conduct.  Rite Aid willfully engaged in the unfair and/or deceptive practices described above and knew or should have known that these practices were unfair and/or deceptive.  Since consumers reasonably rely on Rite Aid's representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury.

203.    Rite Aid made these misrepresentations and omissions willfully and knowingly, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public.

204.    The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff Monmouth and the Indiana Class' decisions about whether to pay for Rite Aid's RSP Drugs, in that Plaintiff Monmouth and the Indiana Class would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's deceptive, fraudulent, false, and unfair acts and practices.

205.    Rite Aid intended for Plaintiff Monmouth and the members of the Indiana Class to pay for RSP Drugs in reliance upon Rite Aid's deceptive, fraudulent, false, and unfair acts and practices so that Plaintiff Monmouth and the Indiana Class would reimburse claims at inflated rates.  Plaintiffs and the Indiana Class justifiably relied on Rite Aid's misrepresentations and omissions.  Had Plaintiff Monmouth and the Indiana Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

206.    Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the Indiana Class.

207.    As a direct and proximate result of Rite Aid's deceptive, fraudulent, false, and unfair acts and practices, Plaintiff Monmouth and the Indiana Class were deceived into paying artificially inflated prices for RSP Drugs and have been damaged because they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

208.    Rite Aid is therefore liable to Plaintiff Monmouth and the members of the Indiana Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees to the extent provided by law.

## NINTH CLAIM FOR RELIEF

### Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law

**Asserted by Plaintiff Monmouth on Behalf of
Louisiana Members of the Class ("Louisiana Class")**

209.    Plaintiff Monmouth repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

210.    Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the Louisiana Class, who are third-party payors either located in Louisiana or with beneficiaries that made purchases of RSP Drugs at Rite Aid in Louisiana for which the third-party payor was overcharged.

211.    Rite Aid, Plaintiff Monmouth, and members of the Louisiana Class, as legal entities, are "persons" within the meaning of La. Rev. Stat. §51:1402(8).

212.    Rite Aid's transactions with Plaintiff Monmouth and the Louisiana Class as described were done "in the conduct of any trade or commerce" within the meaning of La. Rev. Stat. §51:1405, with respect to the acts alleged herein, where Plaintiff Monmouth and members of the Louisiana Class paid all or part of the purchase price of RSP Drugs that Rite Aid sold to beneficiaries.

213.    Plaintiff Monmouth and the Louisiana Class suffered injury and ascertainable losses of money and property as a consequence of Rite Aid's knowing and intentional use and employment of unfair, false, misleading, and deceptive acts or practices in connection with the sale of RSP Drugs paid for by Plaintiff Monmouth and the Louisiana Class, including, among other things:

> (a)    reporting to and charging Plaintiff Monmouth and the Louisiana Class artificially inflated U&C prices for the RSP Drugs;

(b)    communicating to and charging the beneficiaries of Plaintiff Monmouth and the members of the Louisiana Class (or its beneficiaries) artificially inflated copayment, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

(c)    concealing from Plaintiff Monmouth and the Louisiana Class the true U&C prices of the RSP Drugs, and the proper amounts Rite Aid should have reported to and charged Plaintiff Monmouth and the Louisiana Class; and

(d)    wrongfully obtaining monies from Plaintiff Monmouth and the Louisiana Class as a result of its deception.

214.   Rite Aid has engaged, and continues to engage, in conduct that violates public policy as set forth in 50 La. Admin. Code Pt XXIX, 105 and 949, requiring providers of prescription drugs to submit their usual and customary charge when billing the State for prescribed drugs and providing reimbursement at the lesser of the negotiated rate or usual and customary price.  Rite Aid gains an unfair advantage over its competitors, whose practices relating to other similar products must comply with these laws.  Rite Aid's unjustified, inflated pricing of RSP Drugs is oppressive because it overcharges consumers and third-party payors.  The pricing of RSP Drugs is unethical and unscrupulous because it is the result of Rite Aid's desire to achieve maximum financial gain for medically-necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase RSP Drugs.

215.   Rite Aid's conduct, including misrepresenting the U&C price of RSP Drugs, is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have continued with the transaction but for Rite Aid's deceptive, false, misleading, and unfair acts and practices.  Consumers have thus overpaid

56

for RSP Drugs. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Rite Aid's conduct. Rite Aid willfully engaged in the unfair and/or deceptive practices described above and knew or should have known that those practices were unfair and/or deceptive. Since consumers reasonably rely on Rite Aid's representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury.

216.   Rite Aid made misrepresentations and omissions willfully and knowingly, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public.

217.   The facts that Rite Aid misrepresented and/or concealed were material to Plaintiff Monmouth and the Louisiana Class' decisions about whether to pay for RSP Drugs, in that Plaintiff Monmouth and the Louisiana Class would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's improper practices.

218.   Rite Aid intended for Plaintiff Monmouth and the members of the Louisiana Class to pay for RSP Drugs in reliance upon Rite Aid's unfair, false, misleading, or deceptive acts and practices so that Plaintiff Monmouth and the Louisiana Class would reimburse claims at inflated rates. Had Plaintiff Monmouth and the Louisiana Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

219.   Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the Louisiana Class.

220.    As a direct and proximate result of Rite Aid's unfair, false, misleading, and deceptive acts and practices, Plaintiff Monmouth and the Louisiana Class have paid artificially inflated prices for RSP Drugs and have suffered injury and ascertainable losses of money and property thereby.

221.    Rite Aid therefore is liable to Plaintiff Monmouth and the Louisiana Class for the damages they sustained, plus statutory damages (including treble damages), penalties, injunctive relief, costs, and reasonable attorneys' fees, to the extent provided by law.

## TENTH CLAIM FOR RELIEF

### Violation of the Maine Uniform Deceptive Trade Practices Act

**Asserted by Plaintiff Monmouth on Behalf of Maine Members of the Class ("Maine Class")**

222.    Plaintiff Monmouth repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

223.    Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the Maine Class, who are third-party payors either located in Maine or with beneficiaries that made purchases of RSP Drugs at Rite Aid in Maine for which the third-party payor was overcharged.

224.    Rite Aid, Plaintiff Monmouth, and members of the Maine Class, as legal entities, are "persons" within the meaning of Me. Rev. Stat. tit. 10, §1211(5).

225.    Rite Aid's transactions with Plaintiff Monmouth and the Maine Class as described herein occurred in the course of Rite Aid's "business" within the meaning of Me. Rev. Stat. tit. 10, §1211, *et seq*., where Plaintiff Monmouth and members of the Maine Class paid all or part of the purchase price of RSP Drugs that Rite Aid sold to beneficiaries.

226. The Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. tit. 10, §1211, *et seq.*, prohibits "deceptive trade practices," which include "(K) Mak[ing] false or misleading statements concerning the reasons for, existence of, or amounts of price reductions; or (L) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Me. Rev. Stat. tit. 10, §1212(1).

227. Plaintiff Monmouth and the Maine Class have suffered losses and are likely to continue to suffering losses because of Rite Aid's employment of deceptive acts or practices in the course of its business in omitting the existence of a price reduction in the sale of RSP Drugs, by, among other things:

    (a)    reporting to and charging Plaintiff Monmouth and the Maine Class falsely inflated U&C prices for the RSP Drugs;

    (b)    communicating to and charging beneficiaries of Plaintiff Monmouth and the Maine Class (or its beneficiaries) falsely inflated copayment, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

    (c)    concealing from Plaintiff Monmouth and the Maine Class the true U&C prices of the RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the Maine Class should have paid; and

    (d)    wrongfully obtaining monies from Plaintiff Monmouth and the Maine Class as a result of its deception.

228. More specifically, Rite Aid displayed price quotations through submission of claims for reimbursement for prescription drugs to Plaintiff Monmouth and the Maine Class. Rite Aid's price quotations were included in NCPDP field 426-DQ of its claims for reimbursement.

229.    Rite Aid represented that its price quotations included in NCPDP field 426-DQ were U&C prices.  Rite Aid's representation was false, and Rite Aid's true and accurate U&C prices for the prescription drugs for which it sought reimbursement from Plaintiff Monmouth and the Maine Class were lower than the prices quoted by Rite Aid.

230.    Rite Aid made these misrepresentations and omissions willfully and knowingly, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public.

231.    The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff Monmouth and the members of the Maine Class about whether to pay for Rite Aid's RSP Drugs, in that they would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's deceptive, misleading, false, and unfair acts and practices.

232.    Rite Aid intended for Plaintiff Monmouth and the members of the Maine Class to pay for RSP Drugs in reliance upon Rite Aid's deceptive acts and practices so that Plaintiff Monmouth and the Maine Class would reimburse claims at inflated rates.  Had Plaintiff Monmouth and the Maine Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

233.    Rite Aid's actions caused a likelihood of confusion or misunderstanding regarding the true and accurate U&C prices for the RSP Drugs dispensed to beneficiaries of Plaintiff Monmouth and the Maine Class.

234.    Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the Maine Class.

235.    As a direct and proximate result of Rite Aid's deceptive acts and practices, Plaintiff Monmouth and the Maine Class were deceived into paying falsely inflated prices for RSP Drugs and have been damaged because they paid for RSP Drugs at amounts that were far higher than the prices they would have paid but for Rite Aid's misconduct.

236.    Because Rite Aid's deceptive acts and practices are ongoing, Plaintiff Monmouth and the Maine Class are likely to continue to be deceived and damaged by paying falsely inflated prices for RSP Drugs.  Consequently, Plaintiff Monmouth and the Maine Class seek injunctive relief to enjoin Rite Aid from excluding RSP prices from the U&C prices it reports on claims for reimbursement.

237.    Rite Aid therefore is liable to Plaintiff Monmouth and the members of the Maine Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees, to the extent provided by law.

### ELEVENTH CLAIM FOR RELIEF

### <u>Violation of the Maryland Consumer Protection Act</u>

**Asserted by Plaintiff Monmouth on Behalf of the Maryland Members of the Class ("Maryland Class")**

238.    Plaintiff Monmouth repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

239.    Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the Maryland Class, who are third-party payors either located in Maryland or with beneficiaries that made purchases of RSP Drugs at Rite Aid in Maryland for which the third-party payor was overcharged.

240.    Rite Aid, Plaintiff Monmouth, and the Maryland Class, as legal entities, are "persons" within the meaning of Md. Code Ann., Com. Law §13-101(h).

241.    The RSP Drugs that Plaintiff Monmouth and members of the Maryland Class paid for, in whole or in part, are "consumer goods" within the meaning of Md. Code Ann., Com. Law §13-101(d)(1), where Plaintiff Monmouth and members of the Maryland Class paid for, in whole or in part, RSP Drugs that beneficiaries purchased for their own personal, family, or household use.

242.    Rite Aid's transactions with Plaintiff Monmouth and the Maryland Class were "sales" within the meaning of Md. Code Ann., Com. Law §13-101(i).

243.    Rite Aid engaged in unfair, abusive, and deceptive trade practices, including by making a "(6) [f]alse or misleading representation of fact which concerns:  (i) [t]he reason for or the existence or amount of a price reduction[.]"  Md. Code Ann., Com. Law §13-301.

244.    Plaintiff Monmouth and the Maryland Class have been damaged by Rite Aid's unfair, abusive, or deceptive practices in omitting the existence of a price reduction in the sale of RSP Drugs in the sale of consumer goods.  These unfair or deceptive practices, included, among other things:

> (a)    reporting to and charging Plaintiff Monmouth and the Maryland Class artificially inflated U&C prices for the RSP Drugs;
>
> (b)    communicating to and charging the beneficiaries of Plaintiff Monmouth and the Maryland Class (or its beneficiaries) artificially inflated copayments, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;
>
> (c)    concealing from Plaintiff Monmouth and the Maryland Class the true U&C prices of RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the Maryland Class should have paid; and

(d)     wrongfully obtaining monies from Plaintiff Monmouth and the Maryland Class as a result of Rite Aid's deception.

245.   Rite Aid's conduct constitutes an unfair practice in that Rite Aid sells RSP Drugs for a price that is unethical, oppressive, and unscrupulous.  Rite Aid's unjustified, inflated pricing of RSP Drugs is oppressive because it overcharges consumers and third-party payors.  The pricing of RSP Drugs is unethical and unscrupulous because it is the result of Rite Aid's desire to achieve maximum financial gain for medically-necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase RSP Drugs.  Rite Aid gains an unfair advantage over its competitors, whose practices relating to other similar products must comply with the requirement of pharmacy providers to submit their usual and customary charge when billing for prescribed drugs.  Thus, Rite Aid's misconduct caused substantial injury to consumers and businesses, and provided no benefit to consumers or competition.

246.   Rite Aid's conduct, including misrepresenting the U&C price of RSP Drugs, is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have continued with the transaction but for Rite Aid's deceptive, false, and unfair acts and practices.  Consumers have thus overpaid for RSP Drugs.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Rite Aid's conduct.  Rite Aid willfully engaged in the unfair and/or deceptive practices described above and knew or should have known that those practices were unfair and/or deceptive.  Since consumers reasonably rely on Rite Aid's representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury.

247.    More specifically, Rite Aid displayed price quotations through submission of claims for reimbursement for prescription drugs to Plaintiff Monmouth and the Maryland Class. Rite Aid's price quotations were included in NCPDP field 426-DQ of its claims for reimbursement.

248.    Rite Aid represented that its price quotations included in NCPDP field 426-DQ were U&C prices. Rite Aid's representations were false, and Rite Aid's true and accurate U&C prices for the prescription drugs for which it sought reimbursement from Plaintiff Monmouth and the Maryland Class were lower than the prices quoted by Rite Aid.

249.    Rite Aid willfully and knowingly engaged in the unfair or deceptive practices described above, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public, and knew or should have known that those practices were unfair or deceptive.

250.    The facts that Rite Aid misrepresented and concealed were material to Plaintiff Monmouth and the Maryland Class' decisions about whether to pay for Rite Aid's RSP Drugs, in that Plaintiff Monmouth and the Maryland Class would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's unfair or deceptive acts and practices.

251.    Rite Aid intended for Plaintiff Monmouth and the members of the Maryland Class to pay for RSP Drugs in reliance upon Rite Aid's unfair or deceptive acts and practices so that Plaintiff Monmouth and the Maryland Class would reimburse claims at inflated rates. Rite Aid knew that Plaintiff Monmouth and the Maryland Class would rely on the accuracy of the prices Rite Aid reported to and charged them, and that, as a result, Plaintiff Monmouth and the Maryland Class would pay higher than the true U&C prices for its RSP Drugs. Plaintiff Monmouth and the Maryland Class did in fact justifiably rely on Rite Aid's misconduct in that Plaintiff Monmouth

and the Maryland Class would not have paid for RSP Drugs from Rite Aid at falsely inflated amounts but for Rite Aid's misconduct. Thus, Plaintiff and the Maryland Class' reliance on Rite Aid's misconduct was to their detriment. Had Plaintiff Monmouth and the Maryland Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

252. Rite Aid's actions caused a likelihood of confusion or misunderstanding regarding the true and accurate U&C prices for the RSP Drugs because Plaintiff Monmouth and members of the Maryland Class have no way of determining on their own whether the price Rite Aid submits as its U&C price is, in fact, the price offered to cash-paying members of the general public.

253. Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the Maryland Class.

254. As a direct and proximate result of Rite Aid's unfair or deceptive acts and practices, Plaintiff Monmouth and the Maryland Class were deceived into paying falsely inflated prices for RSP Drugs and have been damaged thereby.

255. Rite Aid therefore is liable to Plaintiff Monmouth and the Maryland Class for the damages they sustained, plus statutory damages, exemplary damages, penalties, costs, and reasonable attorneys' fees, to the extent provided by law.

### TWELFTH CLAIM FOR RELIEF

### Violation of New Hampshire Consumer Protection Act, N.H. Stat. §§358-A:1, *et seq.*

### Asserted by Plaintiff Monmouth on Behalf of the New Hampshire Members of the Class ("New Hampshire Class")

256. Plaintiff Monmouth repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

257.    Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the New Hampshire Class, who are third-party payors either located in New Hampshire or with beneficiaries that made purchases of RSP Drugs at Rite Aid in New Hampshire for which the third-party payor was overcharged.

258.    Rite Aid, Plaintiff Monmouth, and the New Hampshire Class, as legal entities, are "persons" within the meaning of N.H. Rev. Stat. §358-A:1(I).

259.    Rite Aid's transactions with Plaintiff Monmouth and the New Hampshire Class constitute "trade" and "commerce" within the meaning of N.H. Rev. Stat. §358-A:1(II), where Plaintiff Monmouth and members of the New Hampshire Class paid all or part of the purchase price of RSP Drugs that Rite Aid sold to beneficiaries.

260.    The New Hampshire Consumer Protection Act ("NHCPA"), prohibits deceptive or unfair acts or practices in the conduct of trade or commerce, including "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."  N.H. Rev. Stat. Ann. §358-A:2(XI).

261.    An unfair practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, offends public policy as established by law or by other established concepts of unfairness, and is of the type proscribed by the NHCPA, attaining the level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce. In interpreting its provisions, the NHCPA requires express consideration be given to interpretations by the FTC relating to §5 of the FTC Act.  See N.H. Rev. Stat. §358-A:13.

262.    Plaintiff Monmouth and the New Hampshire Class have been damaged by Rite Aid's unfair or deceptive practices in the conduct of trade or commerce, in violation of N.H. Rev. Stat. §358-A:1, et. seq. in the course of trade or commerce in omitting the existence of a price

66

reduction in the sale of RSP Drugs paid for by Plaintiff Monmouth and the New Hampshire Class. These unfair or deceptive practices, included, among other things:

(a)    reporting to and charging Plaintiff Monmouth and the New Hampshire Class artificially inflated U&C prices for the RSP Drugs;

(b)    communicating to and charging the beneficiaries of Plaintiff Monmouth and the New Hampshire Class (or its beneficiaries) artificially inflated copayments, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

(c)    concealing from Plaintiff Monmouth and the New Hampshire Class the true U&C prices of RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the New Hampshire Class should have paid; and

(d)    wrongfully obtaining monies from Plaintiff Monmouth and the New Hampshire Class as a result of Rite Aid's deception.

263.   More specifically, Rite Aid displayed price quotations through submission of claims for reimbursement for prescription drugs to Plaintiff Monmouth and the New Hampshire Class.  Rite Aid's price quotations were included in NCPDP field 426-DQ of its claims for reimbursement.

264.   Rite Aid represented that its price quotations included in NCPDP field 426-DQ were U&C prices.  Rite Aid's representation was false, and Rite Aid's true and accurate U&C prices for the prescription drugs for which it sought reimbursement from Plaintiff Monmouth and the New Hampshire Class were lower than the prices quoted by Rite Aid.

265.   Rite Aid willfully and knowingly engaged in the unfair or deceptive practices described above, given that Rite Aid knew the prices it reported to third-party payors and charged

to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public, and knew or should have known that those practices were unfair or deceptive.

266.   Rite Aid has engaged, and continues to engage, in conduct that violates public policy as set forth in N.H. Rev. Stat. Ann. 126-A:3(III)(a) & (b) and N.H. Code Admin. R. He-W 570.14, requiring providers of prescription drugs to submit their usual and customary charge when billing the state for prescribed drugs and providing reimbursement at the lesser of the negotiated rate or usual and customary price, and N.H. Code Admin. R. Ins 2704.03, prohibiting insureds from being charged an amount that exceeds the lesser of the negotiated cost-share amount or the usual and customary price for prescription drugs.  Rite Aid gains an unfair advantage over its competitors, whose practices relating to other similar products must comply with these laws.  Rite Aid's unjustified, inflated pricing of RSP Drugs is oppressive because it overcharges consumers and third-party payors.  The pricing of RSP Drugs is unethical and unscrupulous because it is the result of Rite Aid's desire to achieve maximum financial gain for medically-necessary drugs prescribed to consumers whose medical conditions do not allow them to decline to purchase RSP Drugs.

267.   Rite Aid's conduct, including misrepresenting the U&C price of RSP Drugs, is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have continued with the transaction but for Rite Aid's deceptive or unfair acts and practices.  Consumers have thus overpaid for RSP Drugs.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Rite Aid's conduct.  Rite Aid willfully engaged in the unfair and/or deceptive practices described above and knew or should have known that those

practices were unfair and/or deceptive.  Since consumers reasonably rely on Rite Aid's representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury.

268.   Rite Aid's misconduct, as alleged herein, is of the type proscribed by the NHCPA, attaining the level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.  By knowingly inflating U&C prices, Rite Aid created a likelihood of confusion because Plaintiff Monmouth and members of the New Hampshire Class have no way of determining on their own whether the price Rite Aid submits as its U&C price is, in fact, the price offered to cash-paying members of the general public.

269.   The facts that Rite Aid misrepresented and/or concealed were material to Plaintiff Monmouth and the New Hampshire Class' decisions about whether to purchase or pay for Rite Aid's RSP Drugs, in that Plaintiff Monmouth and the New Hampshire Class would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's unfair or deceptive acts and practices.

270.   Rite Aid intended for Plaintiff Monmouth and the members of the New Hampshire Class to pay for RSP Drugs in reliance upon Rite Aid's unfair or deceptive acts and practices so that Plaintiff Monmouth and the New Hampshire Class would reimburse claims at inflated rates. Had Plaintiff Monmouth and the New Hampshire Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

271.   Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the New Hampshire Class.

272.   Beneficiaries of Plaintiff Monmouth and of other New Hampshire Class members reside in New Hampshire and made purchases of RSP Drugs in New Hampshire.  Furthermore, upon information and belief, third-party payors that are members of the New Hampshire Class are located in New Hampshire.  Thus, Rite Aid's misconduct occurred primarily and substantially in New Hampshire, and Plaintiff Monmouth's and New Hampshire Class members' claims arose in New Hampshire.

273.   As a direct and proximate result of Rite Aid's unfair or deceptive acts and practices, Plaintiff Monmouth and the New Hampshire Class were deceived into paying artificially inflated prices for RSP Drugs and have been damaged thereby.

274.   Rite Aid therefore is liable to Plaintiff Monmouth and the New Hampshire Class for the damages they sustained, plus statutory damages, exemplary damages, penalties, costs, and reasonable attorneys' fees, to the extent provided by law. Plaintiff Monmouth and the other members of the New Hampshire Class also seek injunctive relief pursuant to N.H. Rev. Stat. §358-A:10(I), to enjoin Rite Aid's ongoing wrongful acts described herein.

### THIRTEENTH CLAIM FOR RELIEF

### Violation of New York Gen. Bus. Law §349

### Asserted by Plaintiff Monmouth on Behalf of
### New York Members of the Class ("New York Class")

275.   Plaintiff Monmouth repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

276.   Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the New York Class, who are third-party payors either located in New York or with beneficiaries that made purchases of RSP Drugs at Rite Aid in New York for which the third-party payor was overcharged.

277.    Plaintiff Monmouth and members of the New York Class are "persons" within the meaning of N.Y. Gen. Bus. Law §349(h).

278.    The actions and transactions alleged herein occurred in New York or substantially affected the people of New York, where members of the New York Class are third-party payors either located in New York or have beneficiaries that made purchases of RSP Drugs at Rite Aid in New York for which the third-party payor was overcharged.

279.    At all relevant and material times as described herein, Rite Aid was engaged in "the conduct of any business, trade or commerce" in New York within the meaning of N.Y. Gen. Bus. Law §349, with respect to the acts alleged herein, where Plaintiff Monmouth and members of the New York Class paid all or part of the purchase price of RSP Drugs that Rite Aid sold to beneficiaries.

280.    N.Y. Gen. Bus. Law §349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

281.    Plaintiff Monmouth and the New York Class have suffered losses as a direct, foreseeable, and proximate result of Rite Aid's employment of deceptive acts or practices in the course of its business, by, among other things:

    (a)    reporting to and charging Plaintiff Monmouth and the New York Class artificially inflated U&C prices for the RSP Drugs;

    (b)    communicating to and charging Plaintiff Monmouth's beneficiaries and the New York Class artificially inflated copayment, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

(c)    concealing from Plaintiff Monmouth and the New York Class the true U&C prices of the RSP Drugs, and the proper copayment, coinsurance, or deductible amount Rite Aid should have charged Plaintiff Monmouth and the New York Class; and

(d)    wrongfully obtaining monies from Plaintiff Monmouth and the New York Class as a result of its deception.

282.    Rite Aid willfully and knowingly engaged in the deceptive trade practices described above, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public, and knew or should have known that those practices were deceptive in violation of N.Y. Gen. Bus. Law §349.

283.    The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff Monmouth and the members of the New York Class about whether to pay for Rite Aid's RSP Drugs, in that they would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's deceptive acts and practices, misrepresentations, and material omissions.

284.    Rite Aid intended for Plaintiff Monmouth and the members of the New York Class to pay for RSP Drugs in reliance upon Rite Aid's deceptive acts and practices so that Plaintiff Monmouth and the New York Class would reimburse claims at inflated rates.  Had Plaintiff Monmouth and the New York Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

285.    Rite Aid's misleading and deceptive acts and practices adversely impacted Plaintiff Monmouth and the New York Class, whose beneficiaries are consumers of prescription drugs

purchased at Rite Aid, and therefore, Rite Aid's deceptive acts and practices constitute consumer-oriented conduct under N.Y. Gen. Bus. Law §349 that resulted in actual and direct harm to Plaintiff Monmouth and the New York Class.

286.    As a direct and proximate result of Rite Aid's deceptive acts and practices, misrepresentations, and material omissions, Plaintiff Monmouth and the members of the New York Class were deceived into paying artificially inflated prices for RSP Drugs and have been damaged thereby.

287.    Rite Aid therefore is liable to Plaintiff Monmouth and the members of the New York Class for the damages they sustained, plus statutory damages, penalties, injunctive relief, costs, and reasonable attorneys' fees, to the extent provided by law.

<div align="center">

**FOURTEENTH CLAIM FOR RELIEF**

**<u>Violation of the North Carolina Unfair and Deceptive Trade Practices Act</u>**

**Asserted by Plaintiff Monmouth on Behalf of
North Carolina Members of the Class ("North Carolina Class")**

</div>

288.    Plaintiff Monmouth repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

289.    Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the members of the North Carolina Class, who are third-party payors either located in North Carolina or with beneficiaries that made purchases of RSP Drugs at Rite Aid in North Carolina for which the third-party payor was overcharged.

290.    Plaintiff Monmouth and the North Carolina Class paid all or part of the purchase price of RSP Drugs that Rite Aid sold to beneficiaries, and therefore, are consumers and persons or businesses injured by reason of Rite Aid's unfair and deceptive acts and practices within the meaning of N.C. Gen. Stat. §75-16.

291.   Rite Aid conducted commerce within the meaning of N.C. Gen. Stat. §75-1.1, and Rite Aid's unfair or deceptive acts or practices occur in and affect commerce, where Plaintiff Monmouth and the North Carolina Class paid all or part of the purchase price of RSP Drugs that Rite Aid sold to beneficiaries.

292.   Plaintiff Monmouth and the North Carolina Class have suffered losses because of Rite Aid's employment of unfair or deceptive acts or practices in or affecting commerce, by, among other things:

    (a)   reporting to and charging Plaintiff Monmouth and the North Carolina Class artificially inflated U&C prices for the RSP Drugs;

    (b)   communicating to and charging beneficiaries of Plaintiff Monmouth, consumers, and the North Carolina Class (or its beneficiaries) artificially inflated copayment, coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

    (c)   concealing from Plaintiff Monmouth and the North Carolina Class the true U&C prices of the RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the North Carolina Class should have paid; and

    (d)   wrongfully obtaining monies from Plaintiff Monmouth and the North Carolina Class as a result of its deception.

293.   Rite Aid's conduct constitutes an unfair practice in that Rite Aid sells RSP Drugs for a price that is unethical, oppressive, and unscrupulous.  Rite Aid's unjustified, inflated pricing of RSP Drugs is oppressive because it overcharges consumers and third-party payors.  The pricing of RSP Drugs is unethical and unscrupulous because it is the result of Rite Aid's desire to achieve maximum financial gain for medically necessary drugs prescribed to consumers whose medical

conditions do not allow them to decline to purchase RSP Drugs. Thus, Rite Aid's misconduct caused substantial injury to consumers and businesses, and provided no benefit to consumers or competition. Rite Aid gains an unfair advantage over its competitors, whose practices relating to other similar products are not unfair.

294.    Rite Aid's conduct, including misrepresenting the U&C price of RSP Drugs, is substantially injurious to consumers. Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have continued with the transaction but for Rite Aid's deceptive or unfair acts and practices. Consumers have thus overpaid for RSP Drugs. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Rite Aid's conduct. Rite Aid willfully engaged in the unfair and/or deceptive practices described above and knew or should have known that those practices were unfair and/or deceptive. Since consumers reasonably rely on Rite Aid's representations of their merchandise and injury results from ordinary use of their merchandise, consumers could not have reasonably avoided such injury.

295.    Rite Aid willfully and knowingly engaged in the deceptive trade practices described above, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public, and knew or should have known that those practices were deceptive in violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1, *et seq.*

296.    The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff Monmouth and the members of the North Carolina Class about whether to pay for Rite

Aid's RSP Drugs, in that they would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's deceptive or unfair acts and practices.

297.   Rite Aid intended for Plaintiff Monmouth and the members of the North Carolina Class to pay for RSP Drugs in reliance upon Rite Aid's unfair or deceptive acts and practices so that Plaintiff Monmouth and the North Carolina Class would reimburse claims at inflated rates. Had Plaintiff Monmouth and the North Carolina Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

298.   Rite Aid's actions caused a likelihood of confusion or misunderstanding regarding the true and accurate U&C prices for the RSP Drugs dispensed to beneficiaries of Plaintiff Monmouth and the North Carolina Class.

299.   Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the North Carolina Class.

300.   As a direct and proximate result of Rite Aid's deceptive or unfair acts and practices, Plaintiff Monmouth and the members of the North Carolina Class were deceived into paying artificially inflated prices for RSP Drugs and have been damaged thereby.

301.   Rite Aid therefore is liable to Plaintiff Monmouth and the members of the North Carolina Class for the damages they sustained, plus statutory damages, exemplary damages, penalties, injunctive relief, costs, and reasonable attorneys' fees, to the extent provided by law.

## FIFTEENTH CLAIM FOR RELIEF

### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

**Asserted by Plaintiff Scavello and Plaintiff Monmouth on Behalf of the
Pennsylvania Members of the Class ("Pennsylvania Class")**

302.   Plaintiff Scavello and Plaintiff Monmouth repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

303.   Plaintiff Scavello and Plaintiff Monmouth bring this claim against Rite Aid on behalf of themselves and the members of the Pennsylvania Class, who are consumers as well as third-party payors either located in Pennsylvania or with beneficiaries that made purchases of RSP Drugs at Rite Aid in Pennsylvania for which the third-party payor was overcharged.

304.   Plaintiff Scavello, as a natural person, and Plaintiff Monmouth and the Pennsylvania Class, as legal entities, are "persons" within the meaning of 73 Pa. Cons. Stat. §201-2(2).

305.   Rite Aid's transactions with Plaintiff Scavello and Plaintiff Monmouth and other members of the Pennsylvania Class were "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. §201-2(2), where Plaintiff Scavello, Plaintiff Monmouth, and members of the Pennsylvania Class paid all or part of the price of RSP Drugs that Rite Aid sold to beneficiaries.

306.   Plaintiff Scavello as well as beneficiaries of Plaintiff Monmouth and the Pennsylvania Class purchased RSP Drugs for their own personal, family, or household purposes.

307.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §201-1, *et seq.*, prohibits "unfair or deceptive trade practices," which include "(xi) [m]aking false or misleading statements concerning the reasons for, existence of, or amounts of price reductions; . . . or (xxi) [e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 Pa. Cons. Stat. §201-2(4).

308.   Plaintiff Scavello, Plaintiff Monmouth, and the Pennsylvania Class have been damaged by Rite Aid's "unfair or deceptive acts or practices" in violation of 73 Pa. Cons. Stat. §201-2, *et seq.* in connection with the sale of RSP Drugs to Plaintiff Scavello, Plaintiff Monmouth, and the Pennsylvania Class.  These "unfair or deceptive acts or practices" included, among other things:

<div style="margin-left:2em">

(a)   reporting to and charging Plaintiff Scavello, Plaintiff Monmouth, and the Pennsylvania Class artificially inflated U&C prices for RSP Drugs;

(b)   communicating to and charging the Plaintiff Scavello, beneficiaries of Plaintiff Monmouth, and the Pennsylvania Class artificially inflated copayments that exceeded Rite Aid's true U&C price;

(c)   concealing from Plaintiff Scavello, Plaintiff Monmouth, and the Pennsylvania Class the true U&C prices of RSP Drugs, and the proper payment or reimbursement amount Plaintiff Scavello, Plaintiff Monmouth, and the Pennsylvania Class should have paid; and

(d)   wrongfully obtaining monies from Plaintiff Scavello, Plaintiff Monmouth, and the Pennsylvania Class as a result of Rite Aid's deception.

</div>

309.   More specifically, Rite Aid displayed price quotations through submission of claims for reimbursement for prescription drugs to Plaintiff Monmouth and the third-party payor members of the Pennsylvania Class.  Rite Aid's price quotations were included in NCPDP field 426-DQ of its claims for reimbursement.  Rite Aid represented that its price quotations included in NCPDP field 426-DQ were U&C prices.  Rite Aid's representation was false, and Rite Aid's true and accurate U&C prices for the prescription drugs for which it sought reimbursement from

Plaintiff Monmouth and the third-party payor members of the Pennsylvania Class were lower than the prices quoted by Rite Aid.

310.    Rite Aid also made price representations to Plaintiff Scavello and individual consumer members of the Pennsylvania Class at the point of sale.  Rite Aid's representations were false, and Rite Aid's true and accurate U&C prices for the prescription drugs for which it sought payment from Plaintiff Scavello and individual consumer members of the Pennsylvania Class were lower than the prices quoted by Rite Aid.

311.    Rite Aid made these misrepresentations and omissions willfully and knowingly, given that Rite Aid knew the prices it reported to third-party payors, like Plaintiff Monmouth, and charged to consumers, like Plaintiff Scavello, were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public.

312.    The facts that Rite Aid misrepresented and concealed were material to the decisions of Plaintiff Monmouth and the members of the Pennsylvania Class about whether to pay for Rite Aid's RSP Drugs, in that they would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's deceptive, fraudulent, and false acts and practices.

313.    Rite Aid intended for Plaintiff Monmouth and the members of the Pennsylvania Class to pay for RSP Drugs in reliance upon Rite Aid's deceptive acts and practices so that Plaintiff Monmouth and the Pennsylvania Class would reimburse claims at inflated rates.  Rite Aid knew that Plaintiff Monmouth and the Pennsylvania Class would rely on the accuracy of the prices Rite Aid reported to and charged them, and that, as a result, Plaintiff Monmouth and the Pennsylvania Class would pay higher than the true U&C prices for its RSP Drugs.  Plaintiff Monmouth and the Pennsylvania Class did in fact justifiably rely on Rite Aid's misconduct in that Plaintiff Monmouth and the Pennsylvania Class would not have paid for RSP Drugs from Rite Aid at falsely inflated

amounts but for Rite Aid's misconduct.  Thus, Plaintiff Monmouth and the Pennsylvania Class'
reliance on Rite Aid's misconduct was to their detriment.  Had Plaintiff Monmouth and the
Pennsylvania Class known Rite Aid's true U&C prices, they would have paid less for the
reimbursement of claims submitted by Rite Aid.

314.    Rite Aid's actions caused a likelihood of confusion or misunderstanding regarding
the true and accurate U&C prices for the RSP Drugs paid for by Plaintiff Scavello, Plaintiff
Monmouth, and the Pennsylvania Class.

315.    As a direct and proximate result of Rite Aid's unfair and deceptive acts and
practices, Plaintiff Scavello, Plaintiff Monmouth, and the Pennsylvania Class were deceived into
paying falsely inflated prices for RSP Drugs and have been damaged thereby.

316.    Rite Aid therefore is liable to Plaintiff Scavello, Plaintiff Monmouth, and the
Pennsylvania Class for the damages they sustained, plus statutory damages, exemplary damages,
penalties, costs, and reasonable attorneys' fees, to the extent provided by law.

### SIXTEENTH CLAIM FOR RELIEF

### Violation of the Virginia Consumer Protection Act

**Asserted by Plaintiff Monmouth on Behalf of the Virginia Members of the Class ("Virginia Class")**

317.    Plaintiff Monmouth repeats each and every allegation contained in the paragraphs
above and incorporates such allegations by reference herein.

318.    Plaintiff Monmouth brings this claim against Rite Aid on behalf of itself and the
members of the Virginia Class, who are third-party payors either located in Virginia or with
beneficiaries that made purchases of RSP Drugs at Rite Aid in Virginia for which the third-party
payor was overcharged.

319.   Plaintiff Monmouth and the Virginia Class, as legal entities, are "persons" within the meaning of Va. Code Ann. §59.1-198.

320.   Rite Aid, as a seller of goods in consumer transactions, is a "supplier" within the meaning of Va. Code Ann. §59.1-198.

321.   The RSP Drugs that Plaintiff Monmouth and members of the Virginia Class paid for, in whole or in part, are "goods" within the meaning of Va. Code Ann. §59.1-198.

322.   Rite Aid's transactions with Plaintiff Monmouth and the Virginia Class were "consumer transactions" within the meaning of Va. Code Ann. §59.1-198, where Plaintiff Monmouth and members of the Virginia Class paid for, in whole or in part, RSP Drugs that beneficiaries purchased for their own personal, family, or household use.

323.   The Virginia Consumer Protection Act prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction," including "9. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; . . . [or] 14. [u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  Va. Code Ann. §59.1-200.

324.   Plaintiff Monmouth and the Virginia Class have suffered losses as a result of Rite Aid's fraudulent acts or practices in omitting the existence of a price reduction in the sale of RSP Drugs in connection with a consumer transaction.  These fraudulent acts or practices, included, among other things:

      (a)    reporting to and charging Plaintiff Monmouth and the Virginia Class artificially inflated U&C prices for the RSP Drugs;

      (b)    communicating to and charging the beneficiaries of Plaintiff Monmouth and the Virginia Class (or its beneficiaries) artificially inflated copayments,

coinsurance, or deductible amounts that exceeded Rite Aid's true U&C price;

(c)     concealing from Plaintiff Monmouth and the Virginia Class the true U&C prices of RSP Drugs, and the proper reimbursement amount Plaintiff Monmouth and the Virginia Class should have paid; and

(d)     wrongfully obtaining monies from Plaintiff Monmouth and the Virginia Class as a result of Rite Aid's deception.

325.    More specifically, Rite Aid displayed price quotations through submission of claims for reimbursement for prescription drugs to Plaintiff Monmouth and the Virginia Class. Rite Aid's price quotations were included in NCPDP field 426-DQ of its claims for reimbursement.

326.    Rite Aid represented that its price quotations included in NCPDP field 426-DQ were U&C prices. Rite Aid's representation was false, and Rite Aid's true and accurate U&C prices for the prescription drugs for which it sought reimbursement from Plaintiff Monmouth and the Virginia Class were lower than the prices quoted by Rite Aid.

327.    Rite Aid willfully and knowingly engaged in the fraudulent practices described above, given that Rite Aid knew the prices it reported to third-party payors and charged to beneficiaries were substantially (and unjustifiably) higher than the prices Rite Aid charged under its RSP program to the cash-paying public, and knew or should have known that those practices were unfair or deceptive.

328.    The facts that Rite Aid misrepresented and concealed were material to Plaintiff Monmouth and the Virginia Class' decisions about whether to pay for Rite Aid's RSP Drugs, in that Plaintiff Monmouth and the Virginia Class would not have paid for RSP Drugs from Rite Aid for more than the RSP Prices but for Rite Aid's fraudulent acts and practices.

329.    Rite Aid intended for Plaintiff Monmouth and the members of the Virginia Class to pay for RSP Drugs in reliance upon Rite Aid's fraudulent acts and practices so that Plaintiff Monmouth and the Virginia Class would reimburse claims at inflated rates.  Rite Aid knew that Plaintiff Monmouth and the Virginia Class would rely on the accuracy of the prices Rite Aid reported to and charged them, and that, as a result, Plaintiff Monmouth and the Virginia Class would pay higher than the true U&C prices for its RSP Drugs.  Plaintiff Monmouth and the Virginia Class did in fact justifiably rely on Rite Aid's misconduct in that Plaintiff Monmouth and the Virginia Class would not have paid for RSP Drugs from Rite Aid at falsely inflated amounts but for Rite Aid's misconduct.  Thus, Plaintiff and the Virginia Class' reliance on Rite Aid's misconduct was to their detriment.  Had Plaintiff Monmouth and the Virginia Class known Rite Aid's true U&C prices, they would have paid less for the reimbursement of claims submitted by Rite Aid.

330.    Rite Aid's actions caused a likelihood of confusion or misunderstanding regarding the true and accurate U&C prices for the RSP Drugs because Plaintiff Monmouth and members of the Virginia Class have no way of determining on their own whether the price Rite Aid submits as its U&C price is, in fact, the price offered to cash-paying members of the general public.

331.    Rite Aid's actions are ongoing as Rite Aid continues to report inflated U&C prices in NCPDP field 426-DQ for claims submitted for payment by Plaintiff Monmouth and the Virginia Class.

332.    As a direct and proximate result of Rite Aid's fraudulent acts and practices, Plaintiff Monmouth and the Virginia Class were deceived into paying falsely inflated prices for RSP Drugs and have been damaged thereby.

333.    Rite Aid therefore is liable to Plaintiff Monmouth and the Virginia Class for the damages they sustained, plus statutory damages, exemplary damages, penalties, costs, and reasonable attorneys' fees, to the extent provided by law.

## SEVENTEENTH CLAIM FOR RELIEF

### Declaratory and Injunctive Relief

**Asserted by Plaintiffs on Behalf of the Nationwide Class or, In the Alternative, the State Classes**

334.    Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

335.    Plaintiffs allege this claim on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of each State Class.

336.    Under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief based upon such a judgment.  Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the state statutes described in this Complaint.

337.    During the Class Period, Rite Aid's deceptive, inflated U&C pricing scheme has been uniformly implemented as part of a concerted, years'-long, pervasive campaign to mislead consumers and third-party payors that is ongoing and continues to this day.  Therefore, Plaintiffs face a substantial and imminent risk of future harm and will be injured in the future.

338.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Rite Aid's conduct continues to violate the statutes and laws referenced herein.

339.    The Court also should issue corresponding injunctive relief enjoining Rite Aid from conducting business through the unlawful, unfair, misleading, or deceptive business acts or practices, and other violations of law described in this Complaint; and requiring Rite Aid to implement whatever measures are necessary to remedy the unfair, misleading, or deceptive business acts or practices, and other violations of law described in this Complaint.

340.    Legal remedies are inadequate to address the substantial likelihood of future harm Plaintiffs will sustain in making purchases of RSP Drugs.  While monetary damages will compensate Plaintiffs for Rite Aid's past misconduct, monetary damages will not prevent future misconduct, which Plaintiffs have alleged is likely to occur.

341.    The hardship to Plaintiffs if an injunction is not issued exceeds the hardship to Rite Aid if an injunction is issued.  Plaintiffs and members of the Class will likely incur damages.  On the other hand, the cost to Rite Aid of complying with an injunction is relatively minimal, especially given its pre-existing obligation to do so.

342.    Issuance of the requested injunction will not disserve the public interest.  To the contrary, such an injunction would benefit the public by controlling skyrocketing prescription drug costs for hundreds of thousands, if not millions, of consumers and the third-party payors that pay for prescription benefit coverage for those individuals.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the members of the Class seek judgment in an amount to be determined at trial, as follows:

A.    That Plaintiffs and all members of the Class are owed at least the difference between the amount they paid and the U&C offered to the general public for all RSP Drugs purchased during the applicable liability period of the RSP program;

B.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure, and declare that Plaintiffs are proper Class Representatives;

C.    That the Court grant permanent injunctive relief to prohibit Rite Aid from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.    That the Court award compensatory, consequential, and general damages in an amount to be determined at trial;

E.    That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Rite Aid as a result of its unlawful acts, omissions, and practices;

F.    That the Court award statutory treble damages, and punitive or exemplary damages, to the extent permitted by law;

G.    That the unlawful acts alleged in this Complaint be adjudged and decreed to be a violation of the unfair and deceptive business acts and practices in violation of the consumer protection statutes alleged herein;

H.    That the Court enter a declaratory judgment in favor of Plaintiffs, as described above;

I.    That the Court award to Plaintiffs the cost and disbursements of the action, along with reasonable attorneys' fees;

J.    That the Court award pre- and post-judgment interest at the maximum legal rate; and

K.    That the Court grant all such other relief as it deems just and proper.

## IX.    JURY DEMAND

Plaintiffs and the members of the Class hereby demand a jury trial on all claims so triable.

Dated:  June 9, 2020                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**


/s Joseph P. Guglielmo
Joseph P. Guglielmo (*pro hac vice*)
Carey Alexander (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212)-223-6444
Facsimile:  (212)-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
ecomite@scott-scott.com

Mark J. Dearman
Stuart A. Davidson
Jason H. Alperstein (*pro hac vice*)
Eric S. Dwoskin (*pro hac vice*)
**ROBBINS GELLER RUDMAN
  & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone: (561) 750-3000
Facsimile:  (561) 750-3364
mdearman@rgrdlaw.com
sdavidson@rgrdlaw.com
jalperstein@rgrdlaw.com
edwoskin@rgrdlaw.com

David W. Mitchell (*pro hac vice*)
Brian O. O'Mara
Arthur L. Shingler III
**ROBBINS GELLER RUDMAN
  & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: (619 231-1058

Facsimile:  (619) 231-7423
davidm@rgrdlaw.com
bomara@rgrdlaw.com
ashingler@rgrdlaw.com

Charles E. Schaffer (PA Bar # 76259)
David C. Magagna, Jr. (PA Bar #322463)
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street – Suite 500
Philadelphia, PA  19106
Telephone:  (215) 592-1500
Facsimile:  (215) 592-4663
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

George C. Aguilar (*pro hac vice*)
Steven M. McKany (*pro hac vice*)
**ROBBINS LLP**
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
gaguilar@robbinsllp.com
smckany@robbinsllp.com

Lance A. Harke (*pro hac vice*)
**HARKE PA**
9699 NE Second Avenue
Miami Shores, FL 33138
Telephone:  (305) 536-8220
Facsimile:  (305) 536-8229
lharke@harkepa.com

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2020, a true and correct copy of the foregoing First Amended Class Action Complaint was filed electronically with the Court and was served via ECF on all counsel of record.

/s Joseph P. Guglielmo
Joseph P. Guglielmo